STATE of Minnesota, Respondent,

v.

Michael James DAHLIN, Appellant.

No. A03–1454.

Supreme Court of Minnesota.

May 12, 2005.

Leslie J. Rosenberg, Assistant State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Minnesota State Attorney General, St. Paul, MN, Amy Klobuchar, Hennepin County Attorney, Donna Wolf-son, Assistant County Attorney, Minneapolis, MN, for Respondent.

## OPINION

BLATZ, Chief Justice.

Following a jury trial, appellant Michael James Dahlin was convicted of aiding and abetting the first-degree premeditated murder of Dustin Jirasek under Minn.Stat. §§ 609.185(a)(1), 609.05 (2004). Prior to the sentencing hearing, Dahlin filed a motion to vacate his conviction pursuant to Minn. R.Crim. P. 26.04 on the basis that the trial court erred in instructing the jury only on first-degree premeditated murder despite Dahlin's request at trial that the jury receive instruction on the lesser charge of second-degree intentional murder. The trial court denied this motion and sentenced Dahlin to life in prison.

On appeal, Dahlin claims he is entitled to a new trial because the trial court committed reversible error by refusing to include jury instructions for the lesser-included offenses of second-degree intentional murder and second-degree unintentional felony murder. Dahlin further claims that he was deprived of his right to a fair trial by the prosecutor's misconduct during the trial and by the improper peremptory strike of a minority member of the venire panel. Because we hold that the trial court erred in refusing to instruct the jury on second-degree intentional murder, we reverse and remand for a new trial.

Dustin Jirasek was killed by a single shotgun round fired at close range when he opened the door to his home on December 16, 2000. A month later, appellant Michael Dahlin and his friend Mark Staats were indicted for aiding and abetting the

first-degree premeditated murder of Jirasek.

Dahlin's girlfriend, Sarah Troska, worked with Jirasek. Troska introduced Dahlin to Jirasek in the fall of 2000, and Troska encouraged Dahlin to audition for a place in Jirasek's band. However, Jirasek did not offer Dahlin a band position, telling Troska that the other band members were offended by the nature of the tattoo on Dahlin's arm. When Troska relayed this news to Dahlin, who was a self-described methamphetamine addict, he became visibly angry and telephoned Jirasek in a rage. Unsettled by this call, Jirasek later called Dahlin back and smoothed things over.

In the following months, Dahlin became suspicious that Troska and Jirasek were having an affair. In October 2000, Dahlin drove his truck to Jirasek's home to confront Jirasek about his suspicions. Although Dahlin's shotgun was in his truck, Dahlin did not take the gun along when he walked to Jirasek's door to speak with him. Two days later, an "urgent care center" notified Jirasek and his wife that it had received a telephone call saying that someone at the Jirasek home would soon need the center's services.

After Dahlin's visit and the call from the urgent care center, Jirasek quit his job so that he could end all contact with Troska and Dahlin. Jirasek later accepted his employer's offer of a shift-transfer, which allowed Jirasek to return to work without seeing Troska. Jirasek last worked with Troska in October 2000, and the two never saw each other again. Nonetheless, Dahlin's suspicions persisted.

In the months before the shooting, Dahlin told a number of people that he wanted to hurt Jirasek. Close friends of Dahlin testified that Dahlin had said he wanted to "kick [Jirasek's] butt," and that he had asked for help to "kick [Jirasek's] ass."

On December 15, 2000, Dahlin became angry at Jirasek because Troska told him that months earlier Jirasek had made an insulting comment about Dahlin's male anatomy. Dahlin testified that Troska also told him she had slept with Jirasek, but Troska testified that she had neither had an affair with Jirasek nor told Dahlin that she had. The day before Jirasek was shot, Dahlin told Troska he was going to "kill [Jirasek]." Troska did not believe Dahlin was serious, because threatening to kill people was "a normal part of his ranting and raving."

The next day, Dahlin, armed with his shotgun and a recently purchased semi-automatic handgun, went to Jirasek's house accompanied by his friend, Staats. En route, the two men stopped at a K–Mart to buy ski masks, shotgun ammunition, and a container of gasoline.

Staats did not testify at Dahlin's trial, but during the investigation Staats made a number of statements to the police that were admitted into evidence. In these statements, Staats told the police that he thought Dahlin wanted to "beat up" Jirasek, and that Dahlin never told Staats he planned to shoot Jirasek. According to Staats, after the two men arrived at Jirasek's home, they walked to Jirasek's door together. Dahlin was carrying his shotgun, and Staats was unarmed. Dahlin either knocked or rang the doorbell, and when Jirasek opened the door about five to ten seconds of silence passed before Dahlin fired one shot at Jirasek. While Staats' statements regarding Dahlin's actions were consistent, Staats' explanation of where he was during the shooting changed during the course of the investigation. Initially he stated that he was in Dahlin's truck when Dahlin shot Jirasek, but in subsequent interviews he said that he went to Jirasek's door with Dahlin and was

standing off to the side when Dahlin fired the shotgun.

Dahlin's testimony contradicted many of Staats' statements to the police. Dahlin testified that he went to Jirasek's house the night of the shooting to "talk," and that he planned on "intimidating" Jirasek but never intended to hurt him. After arriving at Jirasek's, Dahlin testified that Staats went to the door alone with the shotgun while Dahlin walked around the house, peeking in the basement windows. Dahlin claimed that he left the handgun in the truck, and thus was unarmed. Dahlin testified that while he was walking to the front of Jirasek's house, Staats unexpectedly fired the shotgun into the doorway. Dahlin stated he did not know why Staats shot Jirasek, but speculated that perhaps Staats was afraid of Jirasek's dog. There were no other eyewitnesses to the shooting, but Jirasek's wife was in the next room and heard the shot. According to Dahlin, the two men then ran to Dahlin's truck and drove away, disposing of the guns on a country road.

At trial, Dahlin stipulated that DNA testing on pants the police seized from his bedroom revealed the presence of small spots of Jirasek's blood. Dahlin also stipulated that his DNA and Jirasek's blood were found through DNA testing on a pair of gloves seized by the police from Dahlin's vehicle two days after the shooting. Staats' DNA was not found on the gloves. Despite these stipulations, Dahlin testified that he had no idea why Jirasek's blood was on his pants, and that he had never seen the gloves until after being arrested.

Before closing arguments, the trial court held a jury instruction conference with counsel. Dahlin's counsel orally requested a second-degree unintentional felony murder instruction, with assault as the underlying felony. The court refused this request, stating that felony murder was not a lesser-included offense of first-degree premeditated murder. After the noon recess, defense counsel brought *State v. Leinweber*, 303 Minn. 414, 228 N.W.2d 120 (1975), to the court's attention, and asserted that second-degree intentional murder "is a mandatory instruction based on this case," thus requesting a second-degree intentional murder instruction in addition to the previously requested second-degree unintentional felony murder instruction. The court read *Leinweber* during a brief recess, then discussed the case at length with counsel before concluding that a second-degree intentional murder instruction was not required because there was "no evidence affirmatively presented by the Defendant or brought out in cross-examination [to test] the prosecution's case that would throw premeditation in doubt." The court also reaffirmed that it would not instruct on unintentional felony murder because it did not believe it was a lesser-included offense of first-degree premeditated murder.

Later, while deliberating, the jury sought clarification regarding the meanings of "intent" and "premeditation." In response, the trial court read the definitions of each term given to the jury during instructions, adding that the jury should "give the words their plain meaning." After deliberating for one day, the jury convicted Dahlin of first-degree premeditated murder, the only crime for which it received instruction.

Dahlin subsequently filed a motion to vacate his conviction and requested a new trial on the ground that the trial court erred in refusing to instruct the jury on second-degree intentional murder.[1] The

---

1. In his motion to vacate, Dahlin did not object to the district court's denial of a sec-

ond-degree unintentional felony murder instruction. He has, however, argued in his

trial court denied this motion, stating that "any rational view of the evidence would either lead to the conclusion that the defendant had nothing to do with the killing or that it was premeditated murder," and explained that "[t]he evidence of premeditation is so strong and really uncontroverted that it would require convoluted thinking to find otherwise." It is from this denial of a new trial that Dahlin now appeals.

### I.

The issue we must decide in this case is whether the trial court erred in not giving the lesser-included offense instructions Dahlin requested. In order to provide context for our analysis of whether the requested lesser-included offense instructions should have been given, we first outline the development of our case law regarding lesser-included offense jury instructions.

The leading Minnesota cases addressing lesser-included offenses are *State v. Jordan*, 272 Minn. 84, 136 N.W.2d 601 (1965) and *State v. Leinweber*, 303 Minn. 414, 228 N.W.2d 120 (1975). In *Jordan*, we summarized our earlier decisions addressing the factors courts must consider when determining whether lesser-included offense instructions should be given. The opinion set forth five governing principles:

  (a) A person prosecuted for a crime may be convicted either of the crime charged or an included crime, but not both.

  (b) If a defendant is guilty as charged, or not at all, instructions with respect to lesser but included crimes are not appropriate.

  (c) If the evidence adduced at trial would permit a finding of guilty of an

included crime, defendant is entitled to appropriate instructions advising the jury of its power to return a verdict of guilty of the lesser offense.

  (d) The right of the defendant to have such instructions given to the jury may be waived expressly or implicitly by failure to make a proper request for such submission.

  (e) Where the jury is provided with forms of verdicts and paragraph (c) above applies, a form of verdict should be included for use by the jury if it finds the defendant guilty of the lesser but included offense.

272 Minn. at 86–87, 136 N.W.2d at 603–04. Ten years later, in *Leinweber*, we applied these principles and set forth an analytical framework that has guided our lesser-included offense jurisprudence for three decades. Here, we reaffirm the core principles articulated in *Leinweber* and also seek to provide further clarification of our lesser-included jurisprudence to better guide trial courts.

### A. *Leinweber*

In *Leinweber*, defendant Harry Leinweber was charged with second-degree intentional murder in the death of his wife, who was killed in the kitchen of their home by a single round fired from his wife's rifle. 303 Minn. at 415–16, 228 N.W.2d at 122. The trial court instructed the jury on the offense charged as well as on the lesser-included offenses of unintentional third-degree murder (depraved mind) and second-degree manslaughter (culpable negligence), but denied Leinweber's request that the jury be instructed on first-degree manslaughter (heat of passion). *Id.* at 416, 228 N.W.2d at 123. Leinweber was con-

---

appeal to this court that the district court erred in denying both the second-degree intentional murder instruction and the second-

degree unintentional felony murder instruction.

victed of unintentional third-degree murder. *Id.* at 415, 228 N.W.2d at 122. On appeal, we held that the refusal to give the requested manslaughter instruction was error, and reversed and remanded for a new trial. *Id.*

The holding in *Leinweber* is better understood in the context of the case's key facts. First, Leinweber did not dispute that the rifle discharged while he was handling it, killing his wife. *Id.* at 416, 228 N.W.2d at 122. However, Leinweber testified that the shooting was accidental, the result of the rifle firing as he dislodged a jammed shell. *Id.* In contrast, the state argued that the killing was intentional—but not committed in the heat of passion. *Id.* The state presented evidence that the Leinwebers' marriage had become "increasingly discordant" and that Leinweber had threatened to kill his wife six weeks earlier. *Id.* at 417, 228 N.W.2d at 123. Mrs. Leinweber's eleven-year-old son testified that he was awakened on the night of the shooting by the argument between his mother and Leinweber—his step-father—before hearing a gunshot. *Id.* at 418, 228 N.W.2d at 124. The son further testified that he saw his mother on the floor and that she "cursed and swore" at her husband for two minutes before she died. *Id.*

Our holding in *Leinweber* acknowledged the "difficult problem" faced by trial courts when determining which lesser-included offense instructions should be given in homicide cases. *Id.* at 419, 228 N.W.2d at 124. After setting forth the lesser-included offense principles from *Jordan*, 272 Minn. at 86–87, 136 N.W.2d at 603–04, we stated:

> To this we add that in a murder case it is preeminently the trial court's duty in the exercise of its discretion to determine what lesser degrees of homicide to submit. * * * Neither the prosecution nor the defense can limit the submission

of such lesser degrees as the trial court determines should be submitted.

*Leinweber* 303 Minn. at 421, 228 N.W.2d at 125. Having established the trial court's duty to instruct when necessary, the *Leinweber* court then articulated a test for trial courts to employ when determining whether a lesser-included offense instruction should be given:

> [T]he test should be whether the evidence would reasonably support a conviction of the lesser degree and at the same time is such that a finding of not guilty of the greater offense would be justified.

*Id.* at 422, 228 N.W.2d at 125–26.

Applying this test to the facts before us in *Leinweber,* we emphasized that, because the shooting was "unwitnessed," the jury was faced with the task of "reconstructing what actually occurred prior to and at the time of the shooting." *Id.* In this process, the jury was free to "credit or reject not only any part of defendant's testimony but also any other testimony, including that presented by the state." *Id.* at 417, 228 N.W.2d at 123. Thus, despite the fact that Leinweber testified that the rifle discharged accidentally and the state argued that the killing was intentional, the jury could "reasonably have inferred" from the evidence that the shooting occurred in the heat of passion. *Id.* at 418–19, 228 N.W.2d at 123. We then summarized the evidence in the record from which the jury could have drawn such a reasonable inference, emphasizing the known tensions in the Leinweber marriage, recent public displays of those tensions, Mrs. Leinweber's visit to an attorney in contemplation of a divorce, and her son's account of events the night of the killing. *Id.* at 418, 228 N.W.2d at 124. Accordingly, we concluded that the trial court erred by failing to instruct the jury on heat-of-passion manslaughter. *Id.* at 415, 228 N.W.2d at 122.

B. The Rational Basis Evidentiary Standard

■ *Leinweber* continues to be the core case in our lesser-included offense jurisprudence. As we currently apply the test first articulated in *Leinweber,* when evaluating whether to give a lesser-included offense instruction, trial courts must determine whether 1) the lesser offense is included in the charged offense; 2) the evidence provides a rational basis for acquitting the defendant of the offense charged; and 3) the evidence provides a rational basis for convicting the defendant of the lesser-included offense. *Stiles v. State,* 664 N.W.2d 315, 319 (Minn.2003) (citing *Bellcourt v. State,* 390 N.W.2d 269, 273 (Minn.1986); *Leinweber,* 303 Minn. at 421–22, 228 N.W.2d at 125–26). In applying this test, Minnesota courts have struggled to determine what, precisely, the phrase "rational basis" means. We have never directly addressed the subject, and a review of our case law provides mixed guidance regarding the quantity and quality of evidence required to satisfy the rational basis standard.

■ Some cases have stated or implied that a lesser-included offense instruction is not warranted when there is *no* evidence adduced to support acquitting of the greater charge and convicting of the lesser. *See, e.g., State v. Merrill,* 428 N.W.2d 361, 370 (Minn.1988) (stating that when expert testimony supported an inference of intent and "no evidence" suggests the death was negligent or accidental, no rational basis existed for a jury to acquit of intentional murder and convict of unintentional felony murder); *State v. Koop,* 380 N.W.2d 493, 495 (Minn.1986) (stating that the record "is devoid" of evidence showing the killing occurred in the heat of passion); *State v. Murphy,* 380 N.W.2d 766, 772 (Minn.1986) (stating record contained "no proof" that defendant engaged only in indecent liber-

ties with victim to rebut uncontroverted evidence that he raped her). We believe that this line of cases—suggesting that a lesser-included offense instruction need not be given if *no* evidence is adduced to support giving the lesser-included offense instruction—is supported by the reasoning in *Leinweber.*

However, we are concerned that other cases have suggested that trial courts may make witness credibility determinations when deciding whether a lesser-included offense instruction should be given. For example, in *State v. Richardson,* we affirmed a trial court's refusal to instruct on lesser-included offenses when the defendant's testimony alone supported the lesser instruction but the trial court found the testimony "so unworthy of belief" in the context of the evidence as a whole that "the jury could not rationally have believed it." 332 N.W.2d 912, 913 (Minn.1983). Our concern is that this language improperly suggests that the trial court may evaluate the credibility of the defendant's testimony when determining whether a rational basis exists in the evidence warranting a lesser-included offense instruction.

We are also concerned that other cases from our court have suggested that, when determining whether a rational basis exists in the evidence to acquit the defendant of the greater charge and convict him of the lesser, trial courts may not only make credibility determinations, but may also weigh the evidence. For example, in *State v. Dukes,* the defendant was charged, *inter alia,* with first-degree felony murder, and the trial court denied Dukes' request for a lesser-included offense instruction on second-degree felony murder. 544 N.W.2d 13, 16 (Minn.1996). Dukes argued that because his accomplice was the actual shooter, and because his accomplice had stated that he fired his weapon merely to scare the victim, the jury had a rational

basis to conclude the shooting was unintentional. *Id.* at 17, 20. We rejected Dukes' argument and affirmed the trial court's refusal to submit a second-degree unintentional felony murder instruction, stating that "[w]e believe the evidence of intent was *strong enough* that the jury could not rationally have acquitted appellant on the first-degree charge." *Id.* at 20 (emphasis added). Similarly, in *State v. Malzac* we concluded that because the "balance of the evidence" indicated that the shooting was intentional—contrary to the defendant's testimony—the trial court did not err in refusing to submit a second-degree manslaughter instruction. 309 Minn. 300, 306–08, 244 N.W.2d 258, 262–63 (1976). The reasoning in *Dukes* and *Malzac* improperly suggests that trial courts may weigh the overall "balance" of the evidence—and consider how "strong" it is—when deciding whether a rational basis exists in the evidence to acquit of the greater charge and convict of the lesser.

■ We emphasize that both credibility determinations and the weighing of evidence are tasks reserved to the jury. *State v. Washington,* 521 N.W.2d 35, 42 (Minn.1994) ("The weight and credibility to be given disputed evidence are determinations to be made by the jury."); *State v. Landa,* 642 N.W.2d 720, 725 (Minn.2002) ("Weighing the credibility of witnesses is the province of the jury.") In determining whether a lesser-included offense instruction should be given, trial courts must consider only whether a rational basis exists in the evidence to acquit of the greater charge and convict of the lesser—without considering either the strength of the evidence or the credibility of the witnesses.

Our system of justice assumes that juries that are properly instructed will weigh the evidence, determine the credibility of witnesses, and reach the appropriate verdict. Indeed, a number of our sister juris-dictions have recognized these principles and require that, in determining whether a rational basis exists to submit a lesser-included offense instruction to the jury, trial courts must look at the evidence in the light most favorable to the party requesting the instruction. *See, e.g., State v. Wilburn,* 249 Kan. 678, 822 P.2d 609, 612 (1991); *People v. Henderson,* 41 N.Y.2d 233, 391 N.Y.S.2d 563, 359 N.E.2d 1357, 1360 (1976); *State v. Davis,* 6 Ohio St.3d 91, 451 N.E.2d 772, 776 (1983); *State v. Velarde,* 734 P.2d 449, 451 (Utah 1986); *State v. Fernandez–Medina,* 141 Wash.2d 448, 6 P.3d 1150, 1154 (2000); *Warren v. State,* 835 P.2d 304, 330–31 (Wyo.1992).

The requirement that trial courts look at the evidence in the light most favorable to the party requesting the instruction protects the defendant's right to the presumption of innocence, maintains the state's burden of proving the defendant's guilt, and reserves the responsibility of evaluating the weight and credibility of the evidence for the jury—where it belongs. As the United States Supreme Court stated in *Keeble v. United States:*

> [I]f the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other— precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction. * * * [W]hile we have never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a

defendant to have the jury instructed on a lesser included offense, it is nevertheless clear that a construction of the [statute in question] to preclude such an instruction would raise difficult constitutional questions.

412 U.S. 205, 212–13, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973) (emphasis in original). The Supreme Court again addressed the constitutional implications of lesser-included offense instructions in *Beck v. Alabama*, noting that "[w]hile we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard." 447 U.S. 625, 637, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

■ Because we share the Supreme Court's concern that the denial of lesser-included offense instructions may lead a jury to resolve any doubts in favor of conviction, we hold that in evaluating whether a rational basis exists in the evidence for a jury to acquit a defendant of a greater charge and convict of a lesser, trial courts must henceforth view the evidence in the light most favorable to the party requesting the instruction. This rule best serves the presumption of innocence while reserving to the jury its responsibility to credit or discredit the witnesses, to weigh the evidence, and to draw reasonable inferences from it.

### C. Lesser-included Offense Instruction Analytical Framework

Having adopted the rule that trial courts must view the evidence in the light most favorable to the party requesting the instruction, we now seek to provide an overview of the analytical framework trial courts must apply when determining whether a lesser-included offense instruc-

tion must be given. Under Minn.Stat. § 609.04, subd. 1 (2004), a defendant "may be convicted of either the crime charged or an included offense, but not both." An included offense includes a lesser degree of the same crime. *Id.*, subd. 1(1). In Minnesota, every lesser degree of murder is intended by § 609.04 to be characterized as an included offense. *Leinweber*, 303 Minn. at 421, 228 N.W.2d at 125.

■■ It is well established in our jurisprudence that we review the denial of a requested lesser-included offense instruction under an abuse of discretion standard. *See, e. g., Leinweber*, 303 Minn. at 421, 228 N.W.2d at 125 (stating that "it is preeminently the trial court's duty in the exercise of its discretion to determine what lesser degrees of homicide to submit"). It is equally well established that where the evidence warrants a lesser-included offense instruction, the trial court *must* give it. *See, e. g., Bellcourt*, 390 N.W.2d at 273 ("The determination of what, if any, lesser offense to submit to the jury lies within the sound discretion of the trial court, * * * but where the evidence warrants an instruction, the trial court must give it."). Further, we have stated that "the failure to submit lesser-included offenses to the jury is grounds for reversal only if the defendant is prejudiced thereby." *State v. Shepherd*, 477 N.W.2d 512, 516 (Minn. 1991) (citing *Bellcourt*, 390 N.W.2d at 273). Taken together, these three dimensions of our lesser-included offense jurisprudence may create confusion regarding how the trial court's discretion, the trial court's duty, and the conditions giving rise to reversible error relate. We seek to clarify these issues here.

■ As a preliminary matter, we emphasize that when a defendant fails to request a lesser-included offense instruction warranted by the evidence, the defendant impliedly waives his or her right to

receive the instruction. *Leinweber*, 303 Minn. at 422, 228 N.W.2d at 126; *Jordan*, 272 Minn. at 86, 136 N.W.2d at 604; Minn. R.Crim. P. 26.03, subd. 18(3). If a defendant expressly waives the right to receive an instruction, the trial court may, in its discretion, withhold the instruction. *Bellcourt*, 390 N.W.2d at 274 (stating that defendant's request that the court *not* give a warranted lesser-included offense instruction constituted a waiver and the trial court did not err in refusing to give it); *State v. Walker*, 306 Minn. 105, 120–21, 235 N.W.2d 810, 820 (1975) (holding that when a defendant knowingly waived a lesser-included offense instruction warranted by the evidence, the defendant could not subsequently allege that the trial court erred in not sua sponte giving the instruction). Thus, absent plain error affecting a defendant's substantial rights, a trial court does not err when it does not give a warranted lesser-included offense instruction if the defendant has impliedly or expressly waived that instruction. *See State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). We emphasize, however, that "[n]either the prosecution nor the defense can limit the submission of such lesser degrees as the trial court determines should be submitted." *Leinweber*, 303 Minn. at 421, 228 N.W.2d at 125. Even when a defendant has expressly or impliedly waived a jury instruction, a trial court may, in its discretion, ignore the waiver and give any instructions warranted by the evidence.

The more difficult questions arise in cases where a trial court has refused to give an instruction *requested* by the defendant. As our court has made clear, trial courts must give a lesser-included offense instruction when 1) the lesser offense is included in the charged offense; 2) the evidence provides a rational basis for acquitting the defendant of the offense charged; and 3) the evidence provides a rational basis for convicting the defendant of the lesser-included offense. *Stiles v. State*, 664 N.W.2d 315, 319 (Minn.2003) (citing *Bellcourt*, 390 N.W.2d at 273; *Leinweber*, 303 Minn. at 421–22, 228 N.W.2d at 125–26)). In addition to this three-part test, we have clarified in this opinion that trial courts must look at the evidence in the light most favorable to the party requesting the instruction when determining whether a lesser-included offense instruction is warranted. Trial courts may not weigh the evidence or make credibility determinations when determining if a lesser-included offense instruction is warranted. *See* Part I.B, *supra*.

■■■ Our adoption of the "light most favorable" standard raises the question of to what degree—if any—a trial court may exercise its discretion in determining whether a requested lesser-included offense instruction must be given. We hold that, under the "light most favorable" standard, when evidence exists to support the giving of the instruction, it is an abuse of discretion for a trial court judge to weigh the evidence or discredit witnesses and thereby deny an instruction. In other words, on appeal we will review the record in the light most favorable to the party requesting the instruction to determine whether the trial court abused its discretion in deciding the instruction was not warranted by the evidence.

■■■ The determination of whether the requested lesser-included offense instruction is warranted by the evidence does not, however, end our inquiry. As noted above, "the failure to submit lesser-included offenses to the jury is grounds for reversal only if the defendant is prejudiced thereby." *Shepherd*, 477 N.W.2d at 516 (citing *Bellcourt*, 390 N.W.2d at 273); *see also State v. Edwards*, 343 N.W.2d 269, 276 (Minn.1984) (stating that "[a]lthough we believe that the court erred in failing to

submit the offense, we do not believe that the error was prejudicial"); *Leinweber*, 303 Minn. at 422, 228 N.W.2d at 126. Accordingly, when we determine that an instruction requested by a defendant and denied by the trial court was warranted by the evidence, we then must proceed to an analysis of whether the defendant was prejudiced by the trial court's failure to give it.

Under our case law, when determining if a defendant has been prejudiced by the court's failure to give a requested lesser-included offense instruction, appellate courts should consider the instructions actually given and the verdict rendered by the jury. For example, in *State v. Shepherd*, we concluded that the defendant was not prejudiced by the court's failure to give a second-degree unintentional felony murder instruction. 477 N.W.2d at 516. The court in *Shepherd* instructed the jury on first-degree premeditated murder, second-degree intentional murder, and first-degree heat-of-passion manslaughter and the jury returned a verdict of guilty of first-degree premeditated murder. *Id.* at 514. We stated that the jury's conclusion that the defendant acted with premeditation, despite the option of acquitting him of premeditated murder and finding him guilty of only intentional murder or heat-of-passion manslaughter, demonstrated that the jury would not have found the defendant guilty of unintentional felony murder. *Id.* at 516; *see also State v. Merrill*, 274 N.W.2d 99, 105 (Minn.1978) (stating that when the trial court instruct-

ed the jury only on first-degree premeditated murder and second-degree intentional murder, the failure to give requested lesser-included offense instructions did not prejudice the defendant on the issue of intent because the jury's verdict of guilty of first-degree premeditated murder indicated that it not only believed the defendant acted with intent, but that he acted with premeditation as well).[2] When an appellate court determines that a requested lesser-included offense instruction was warranted by the evidence, and the denial of that instruction prejudiced the defendant, reversal is required. *State v. Griffin*, 518 N.W.2d 1, 4 (Minn.1994); *Leinweber*, 303 Minn. at 419, 228 N.W.2d at 124; *see also State v. Shannon*, 514 N.W.2d 790, 792–93 (Minn.1994) (stating that lesser-included offense instruction should have been given, but reversing for new trial on other grounds); *accord Keeble*, 412 U.S. at 213, 93 S.Ct. 1993 (stating that where the jury was faced with either convicting on instruction given or acquitting outright, a different verdict may have been reached had the jury been given the requested lesser-included offense instruction).

## II.

With these principles in mind, we turn to Dahlin's claim that the trial court erred in refusing his request at trial for instructions on second-degree intentional murder and second-degree unintentional felony murder. The element of premeditation distinguishes first-degree premeditat-

---

**2.** Each of these cases supports the principle that an appellate court may look to the jury instructions given and the verdict rendered in determining whether a defendant was prejudiced by the trial court's refusal to give a requested lesser-included offense instruction. However, to the extent these cases suggest that appellate courts may consider the sufficiency of the evidence supporting the verdict rendered in determining whether a defendant was prejudiced, they should no longer be followed. Rather, appellate courts must consider the jury instructions given and the verdict actually rendered to determine whether a possibility exists that the jury could have returned a verdict of guilty on *only* the requested lesser-included offense instruction. If so, the defendant is prejudiced and the court's failure to give the instruction is reversible error.

ed murder from second-degree intentional murder, and the element of intent further distinguishes second-degree intentional murder from second-degree felony murder. *Compare* Minn.Stat. § 609.185(a)(1) *with* § 609.19, subd. 1(1) (2004), *and* § 609.19, subd. 2(1) (2004). In this case, by refusing Dahlin's request for second-degree intentional murder and second-degree unintentional felony murder, the trial court determined as a matter of law that the evidence warranted giving the jury only two alternatives in their deliberations—either Dahlin was guilty of premeditated murder or he was innocent.

In explaining its conclusion that the jury could not rationally find a lack of either intent or premeditation, the trial court noted that, regardless of whether Dahlin or his accomplice was the shooter, the facts incontrovertibly established both elements. The trial court emphasized that Dahlin's theory of the case was that Staats was the shooter, but that Dahlin "never offered evidence or a theory as to why Staats would shoot Jirasek at all." The trial court went on:

> The fact of the matter is that the only practical way the Jury could find intentional and unpremeditated murder is if they found Dahlin the shooter and that his act was unpremeditated. The evidence of premeditation is so strong and really uncontroverted that it would require convoluted thinking to find otherwise.

The trial court then determined that "any rational view of the evidence would either lead to the conclusion that the defendant had nothing to do with the killing or that it was premeditated murder."

Dahlin disputes the trial court's conclusion that there is no rational basis in the evidence to acquit of first-degree premeditated murder and convict of second-degree intentional murder. While the state presented substantial evidence in support of its theory that Dahlin killed Jirasek with both intent and premeditation, Dahlin's argument is persuasive in that evidence was also presented to suggest that the killing may not have been premeditated. For example, Dahlin testified that he only wanted to "talk with" Jirasek, or perhaps "intimidate" him, and this testimony was corroborated by his accomplice, who told the police that he thought Dahlin only wanted to "beat [Jirasek] up." Dahlin's girlfriend testified that threatening to kill people was a normal part of Dahlin's "ranting and raving" but that she did not think he would actually kill Jirasek. In addition, a friend of Dahlin's testified that a few days before the shooting, Dahlin asked his friend to help him "kick [Jirasek's] ass." Indeed, it appears that the issue of premeditation caused the jury some difficulty, because during the course of deliberations the jury sent a note to the trial judge seeking clarification regarding the meaning of "intent" and "premeditation" before finding Dahlin guilty of the only charge before it—aiding and abetting first-degree premeditated murder.

■ We urge trial courts to be mindful of our statements in prior cases which recognize that, even when "the defendant's own testimony does not support the theory that he is guilty only of a lesser offense," a lesser-included offense instruction is not precluded "if the record on the whole provides a rational basis for acquitting the defendant of the charged offense and convicting him of the lesser offense." *Griffin*, 518 N.W.2d at 3 (citing *Leinweber*, 303 Minn. at 417–18, 228 N.W.2d at 123). Such was the case in *Leinweber*. There, the defendant testified the shooting was accidental, but nonetheless requested a heat-of-passion manslaughter instruction. *Leinweber*, 303 Minn. at 416–20, 228 N.W.2d at 123–24. We held that the re-

fusal of the heat-of-passion instruction was error, emphasizing that the jury was free to credit or reject any part of the defendant's testimony, as well as any other testimony, in reaching its verdict. *Id.*

Accordingly, we conclude that, when the evidence is viewed in the light most favorable to Dahlin, the trial court abused its discretion in determining that no rational basis existed in the evidence for the jury to find that Dahlin killed Jirasek without premeditation. Questions of intent and premeditation are not easily susceptible to direct proof, and usually can only be inferred by a jury from the evidence presented. *State v. Fratzke*, 354 N.W.2d 402, 409 (Minn.1984) (stating determinations of intent are primarily questions of fact for jurors "to decide on the basis of their experiences in life and common sense"); *State v. Flores*, 418 N.W.2d 150, 155 (Minn.1988) ("Premeditation, being a process of the mind, is wholly subjective and hence not always susceptible to proof by direct evidence.") (quoting 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 11.02 (1985)). By not giving the lesser-included offense instruction of second-degree intentional murder, the trial court forced the jury to choose between convicting Dahlin of premeditated murder and acquitting him of a crime for which the evidence clearly suggested he was responsible—at least to some degree. Such either-or framing of guilt or innocence is appropriate only in exceptional cases.[3]

Therefore, we hold that the trial court erred when it concluded that Dahlin was not entitled to an instruction on second-degree intentional murder. This error prejudiced Dahlin, because the jury—had it been instructed on second-degree intentional murder—may have convicted Dahlin of the lesser charge.

In addition to asserting that the trial court erred in failing to give an instruction for second-degree intentional murder, Dahlin also claims the court erred in refusing to give an instruction for second-degree unintentional felony murder, with assault as the underlying felony.[4] Because we are remanding for a new trial, we need not reach the question of whether the failure to give the unintentional felony murder instruction was also error. If Dahlin requests an unintentional felony murder instruction at the next trial, the trial court must determine, viewing the evidence in the light most favorable to Dahlin, whether the instruction is warranted.

Reversed and remanded.

---

**3.** We believe that cases in which premeditation exists as a matter of law—thereby precluding the submission of a lesser-included offense instruction on second-degree intentional murder—will be rare. *See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 11.02 cmt. (4th ed. 1999) ("The charge as to the lesser offense of murder in the second degree has been included, because * * * it seems there are few cases in which murder in the second degree is not a lesser-included offense. When the killing is alleged to have been done by another at the instigation of defendant, it is possible that only a charge of murder in the first degree would be appropriate.").

**4.** Because we have remanded for a new trial, we do not address Dahlin's claim that he was deprived of his right to a fair trial by the improper peremptory strike of a member of the venire panel. We also do not reach Dahlin's claims of prosecutorial misconduct, including his assertion that the prosecutor committed misconduct by presenting DNA in an improper and misleading way. Without deciding the issue, we nonetheless caution prosecutors to refrain from describing DNA evidence as "magical stuff," and "the best thing to happen to the criminal justice system since the United States Constitution because it's like truth serum." *See State v. Bailey*, 677 N.W.2d 380, 403 (Minn.2004).

ANDERSON, G. BARRY, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.