*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2382**

State of Minnesota,
Respondent,

vs.

Ronald Matthew Quiceno,
Appellant.

**Filed February 9, 2015
Affirmed
Hudson, Judge**

Becker County District Court
File No. 03-CR-13-195

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Gretchen D. Thilmony, Becker County Attorney, Detroit Lakes, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Peterson, Judge; and Hudson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HUDSON**, Judge

Appellant challenges his convictions of second-degree intentional murder, second-degree assault, and being a prohibited person in possession of a firearm. He argues that

the district court erred in denying his motion for a lesser-included offense instruction on the charge of first-degree heat-of-passion manslaughter. In his pro se supplemental brief, appellant argues that: (1) the district court erred by failing to order a competency hearing; (2) his trial counsel was ineffective; and (3) the district court erred by failing to sua sponte dismiss jurors for cause. Because we conclude that there was not a rational basis for the jury to find appellant guilty of the lesser-included offense and that appellant's pro se arguments are without merit, we affirm.

## FACTS

Appellant Ronald Matthew Quiceno was charged with second-degree intentional murder, second-degree attempted murder, second-degree unintentional felony murder, second-degree assault, and being a prohibited person in possession of a firearm after he shot and killed T.B. on the morning of January 26, 2013. That morning and the previous evening, appellant and his friend, H.M., had attended a party at the residence of B.B., who lived in a mobile home located in Detroit Lakes. Several people were at B.B.'s home, including T.B. Appellant and T.B. did not know each other well; appellant testified that he had seen T.B. only on occasion around town.

Appellant and T.B. began to participate in a "rap battle" in the front room of the residence. T.B. criticized appellant for reading lyrics from his cell phone, instead of rapping "free-style," as T.B. was doing. An argument broke out between T.B. and appellant; T.B. struck appellant in the face after appellant insulted T.B. and T.B.'s cousin, who was also present at the party. Appellant testified that T.B.'s blow "wasn't much of a punch." T.B. told appellant to leave; appellant and H.M. left the residence and stood

2

outside near appellant's vehicle. As appellant left, he told T.B. "You'll get what's coming to you." T.B. told others that he was upset because appellant had "disrespected" him and his cousin. As appellant stood outside, he told two other people arriving at the party, B.G. and K.B., that B.B. needed to keep T.B. "in check." B.B. located appellant near his vehicle and told him to go inside and "squash this." Appellant appeared calm and collected as he reentered the residence.

The argument quickly escalated after appellant returned to the trailer. B.B. testified that he believed a fight was about to occur between appellant, B.G., and T.B. He also indicated that several people had to restrain T.B. from attacking appellant. H.M. attempted to push appellant out the door; he testified that appellant needed to leave for the situation to improve. H.M. stated that, as he attempted to convince appellant to leave, appellant kept turning around "to say a few words" to T.B.

Several witnesses testified that, just before appellant reached the door, he turned around, pulled out a gun, and fired between six and eight shots, killing T.B. and wounding B.G. But appellant testified that he acted in self-defense. He stated that, after he reentered the home and during the course of the subsequent altercation, B.G. jammed a gun into his stomach and told him to "get the f-ck out." Appellant testified that he wrestled the gun away and that he fired several shots at T.B. because he believed that T.B. was about to attack him. Appellant admitted that he owned the gun used in the shooting and testified that he was unsure how B.G. came to be in possession of it at the party.

3

Appellant fled to his friend's home, whose roommate testified that appellant appeared "calm" when he arrived. Appellant removed the empty casings from the gun used in the shooting; his friend informed police that the casings were thrown in the wood furnace. Appellant left the gun with his friend, who turned it over to law enforcement.

Appellant was arrested shortly thereafter. Following trial, the jury found appellant guilty on all counts except second-degree attempted murder. The district court entered convictions on the second-degree intentional murder, second-degree assault, and being a prohibited person in possession of a firearm counts and sentenced appellant to a prison term of 451 months. This appeal follows.

## D E C I S I O N

## I

Appellant argues that the district court erred by denying his motion for a lesser-included-offense instruction on the charge of first-degree heat-of-passion manslaughter. The state argues that there is not a rational basis for the jury to find appellant guilty of the lesser offense.

The district court must provide a lesser-included-offense instruction when the evidence warrants it. *State v. Hannon*, 703 N.W.2d 498, 509 (Minn. 2005). "Whether an offense is a lesser-included offense is determined by examining the elements of the offense rather than the facts of a particular case." *State v. Lory*, 559 N.W.2d 425, 428 (Minn. App. 1997), *review denied* (Minn. Apr. 15, 1997). An instruction is warranted when: (1) the lesser offense is included in the charged offense; (2) the evidence provides a rational basis to find the defendant guilty of the lesser-included offense; and (3) the

4

evidence provides a rational basis to find the defendant not guilty of the offense charged. *State v. Dahlin*, 695 N.W.2d 588, 598 (Minn. 2005). Because it is undisputed that first-degree heat-of-passion manslaughter is a lesser-included offense of both second-degree intentional and second-degree felony murder, we examine only whether the evidence provides a rational basis to find appellant guilty of the lesser offense and not guilty of the charged offense. *See State v. Leinweber*, 303 Minn. 414, 417, 228 N.W.2d 120, 123 (1975) (considering first-degree manslaughter offense as lesser offense of second-degree intentional murder); *State v. Galvan*, 374 N.W.2d 269, 271 (Minn. 1985) (stating that first-degree manslaughter offense is lesser offense of second-degree felony murder).

We review the denial of a requested lesser-included-offense instruction for an abuse of discretion. *Dahlin*, 695 N.W.2d at 597. A district court abuses its discretion by failing to give a lesser-included-offense instruction when warranted by the evidence. *Id*. In determining whether there is a rational basis to find the defendant guilty of the lesser offense and not guilty of the charged offense, we consider the record in the light most favorable to the party requesting the lesser-included instruction. *Id.* We do not make credibility determinations or consider what reasonable inferences the jury could draw from the evidence in making this determination. *See State v. Johnson*, 719 N.W.2d 619, 624 (Minn. 2006). Instead, we leave those issues for the jury's consideration. *Id*.

We first consider whether the evidence provides a rational basis to find appellant guilty of heat-of-passion manslaughter. To warrant a lesser-included instruction for this offense, there must be a rational basis for the jury to find that: (1) the defendant intentionally committed the killing in the heat of passion and (2) the defendant's passion

5

was provoked by words or acts of another that would provoke a person of ordinary self-control under similar circumstances. Minn. Stat. § 609.20(1) (2012). The first element requires a subjective analysis, which focuses on whether the heat of passion clouded the defendant's reason and weakened the defendant's willpower. *State v. Carney*, 649 N.W.2d 455, 461 (Minn. 2002). The second element requires an objective examination. *State v. Buchanan*, 431 N.W.2d 542, 549 (Minn. 1988). Evidence that demonstrates that the defendant was provoked by fear of great bodily harm or death can provide a rational basis to find the defendant guilty of heat-of-passion manslaughter. *State v. Matthews*, 301 Minn. 133, 135–36, 221 N.W.2d 563, 565 (1974).

Here, the district court denied appellant's motion for a heat-of-passion manslaughter instruction because "the only provocation that the evidence really shows is the fact that [T.B.] smacked [appellant] in the jaw." The district court determined that, because there "was a lot of intervening time between that assault . . . and the time that [appellant] went back into the trailer," there was not a rational basis to find that appellant acted in the heat of passion when he shot T.B. Appellant argues that the district court's decision was an abuse of its discretion. We disagree.

The evidence, when considered in a light most favorable to appellant, demonstrates that appellant and T.B. became involved in a verbal altercation that escalated to a physical confrontation when T.B. struck appellant in the face. But appellant did not immediately retaliate; instead, he left the residence and stood outside for a few minutes. An eyewitness indicated that he calmed down during this intervening time. Upon reentry and resumption of the argument, B.G. stuck a gun in appellant's

6

stomach, which appellant wrestled away and used to fire several shots at T.B.[1]  Though appellant testified that he was upset and "leery" when he reentered the trailer and that he was "very frightened" by T.B. and B.G.'s subsequent conduct, there is no indication that his willpower was weakened or that he experienced the "loss of self-control" normally associated with heat of passion.  *State v. Stewart*, 624 N.W.2d 585, 591 (Minn. 2001).  It is evident from his testimony that appellant retained control of his actions and that he understood the nature of his conduct.  No other witness testified that appellant's emotional state appeared compromised when he shot T.B.

In addition, evidence of appellant's behavior after the shooting is relevant to the determination of whether there was a rational basis to find that he acted in the heat of passion.  *Carney*, 649 N.W.2d at 461.  Here, witnesses testified that after appellant shot T.B., he immediately fled from B.B.'s residence, that he appeared calm and composed, and that he, with the assistance of his friend, attempted to conceal the weapon and shell casings that he used.  Appellant's cool demeanor, his attempts to hide evidence, and his quick exit are also circumstances that demonstrate that he considered the consequences of his conduct; these actions further establish a "rational, calculating, and controlled" state of mind that is inconsistent with heat-of-passion.  *Stewart*, 624 N.W.2d at 591.  *See also State v. Radke*, 821 N.W.2d 316, 328 (Minn. 2012) (concluding that defendant's attempts to persuade witness not to speak to others demonstrated lack of heat of passion).  We

---

[1] We note that appellant's testimony is inconsistent with the testimony offered by several other witnesses.  But because his testimony is more favorable to his argument, our standard of review dictates that we consider it in determining whether a lesser-included offense instruction was warranted. *Dahlin*, 695 N.W.2d at 596–97.

7

therefore conclude that there was not a rational basis to find appellant guilty of first-degree heat-of-passion manslaughter and that the district court did not abuse its discretion by denying appellant's motion for a lesser-included-offense instruction.

## II

Appellant also argues, by way of his pro se supplemental brief, that the district court erred by failing to sua sponte order a competency hearing before trial. A defendant is incompetent to proceed and may not be tried or sentenced if the defendant lacks the ability to: (1) "rationally consult with counsel," or (2) "understand the proceedings or participate in the defense due to mental illness or deficiency." Minn. R. Crim. P. 20.01, subd. 2. The district court must suspend the criminal proceedings upon motion of either party or by its own initiative if the district court finds there is reason to doubt a defendant's competency. Minn. R. Crim. P. 20.01, subds. 3–5. In considering whether there is reason to doubt a defendant's competency, the district court is to consider several factors, including "[e]vidence of the defendant's irrational behavior, demeanor at trial, and any prior medical opinion on competence to stand trial." *State v. Camacho*, 561 N.W.2d 160, 172 (Minn. 1997).

Appellant argues that a competency hearing was warranted because he was under the care of two psychiatrists and that he had been taking several different prescription medications. But neither appellant nor his trial counsel provided this information to the district court. And a careful review of the record demonstrates that appellant behaved rationally at trial and that nothing about his conduct should have informed the district court that a competency hearing was necessary. No documentation of appellant's

8

medical history is in evidence, nor is there any other information or testimony from appellant's medical providers that is relevant to his competence. Under these circumstances, the district court's failure to hold a competency hearing was not erroneous.

### III

Appellant also argues that he was denied effective assistance of trial counsel. A criminal defendant possesses the constitutional right to effective assistance of counsel, which we examine under a two-pronged analysis. *State v. Bobo*, 770 N.W.2d 129, 137 (Minn. 2009). First, the defendant must show that his or her counsel's representation "fell below an objective standard of reasonableness." *Fields v. State*, 733 N.W.2d 465, 468 (Minn. 2007) (quotation omitted). Second, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotation omitted). We review a claim for ineffective assistance of counsel de novo. *Opsahl v. State*, 677 N.W.2d 414, 420 (Minn. 2004). On review, "[t]here is a strong presumption that counsel's performance was reasonable." *Boitnott v. State*, 631 N.W.2d 362, 370 (Minn. 2001).

Here, appellant alleges that trial counsel was ineffective because he: (1) failed to object to the state's use of both appellant's marital and birth name; (2) chose not to call certain witnesses on his behalf; (3) failed to impeach state witnesses; and (4) did not move to dismiss prospective jurors for cause. Appellant's allegations center on issues of trial strategy, which we do not review in a claim for ineffective assistance. *Andersen v.*

*State*, 830 N.W.2d 1, 13 (Minn. 2013); *Bobo*, 770 N.W.2d at 138; *Dunn v. State*, 499 N.W.2d 37, 38 (Minn. 1993). We therefore reject this claim.

**IV**

Finally, appellant argues that the district court's failure to sua sponte dismiss prospective jurors for cause denied him of his right to a fair trial. Appellant asserts that the district court should have removed several jurors who indicated that they had heard about the case from the local media and were familiar with other members of the jury panel. He also argues that the district court should have dismissed a juror who was related to one of the state's witnesses.

A juror challenge for cause must be initiated by motion. Minn. R. Crim. P. 26.02, subd. 5(1); *State v. Gillespie*, 710 N.W.2d 289, 296 (Minn. App. 2006), *review denied* (Minn. May 16, 2006). We have previously stated that "[n]either the caselaw nor the rules of criminal procedure impose on the district court a duty to strike prospective jurors for cause sua sponte." *Gillespie*, 710 N.W.2d at 296. And even if the district court possessed the duty to dismiss potential jurors sua sponte, we would find no merit in appellant's argument that the district court erred by failing to do so here. The test of an impartial juror is whether he or she "can lay aside [his or her] impression or opinion and render a verdict based on the evidence presented in court." *State v. Andrews*, 282 Minn. 386, 394, 165 N.W.2d 528, 534 (1969) (quotation omitted). The district court is in the best position to observe and assess the demeanor of a prospective juror to determine whether the juror should be excused for cause. *State v. Alladin*, 408 N.W.2d 642, 650 (Minn. App. 1987), *review denied* (Minn. Aug. 12, 1987).

Here, the district court conducted a thorough examination of the jury panel and inquired of each juror's ability to consider the facts objectively and remain impartial at trial. Each juror informed the district court that he or she was able to maintain an open mind and consider the evidence fairly. Appellant retained the opportunity to voir dire the jurors, to challenge them for cause, and to exercise peremptory challenges if it was appropriate. Under these circumstances, the district court's decision not to dismiss the jurors did not affect the fairness of appellant's trial. *See, e.g.*, *State v. Graham*, 371 N.W.2d 204, 206–07 (Minn. 1985) (upholding district court's decision not to remove juror for cause when prospective juror stated that in the past she had believed defendant to be guilty but currently believed she could presume defendant innocent and fairly try case). We therefore reject appellant's claim that the district court erred by failing to sua sponte dismiss potential jurors for cause.

**Affirmed.**