*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1619**

State of Minnesota,
Respondent,

vs.

Lori Ann Fulwiler,
Appellant.

**Filed April 6, 2015
Affirmed
Halbrooks, Judge**

Mille Lacs County District Court
File No. 48-CR-12-2364

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janice Jude, Mille Lacs County Attorney, Brian D. Wold, Heather R. Van Zee, Assistant County Attorneys, Milaca, Minnesota (for respondent)

Lori Ann Fulwiler, Isle, Minnesota (pro se appellant)

Considered and decided by Johnson, Presiding Judge; Halbrooks, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant, pro se, challenges her terroristic-threats conviction, arguing that (1) the evidence was insufficient to prove that she made terroristic threats, (2) the prosecutor

committed misconduct during closing argument, and (3) she received ineffective assistance of counsel. We affirm.

## FACTS

On November 13, 2012, the state charged appellant Lori Ann Fulwiler with terroristic threats, in violation of Minn. Stat. § 609.713, subd. 1 (2012). The complaint states that, on or about November 1 or 2, 2012, Fulwiler entered the break room at the Grand Casino Mille Lacs, her place of employment, and stated that "she couldn't wait to 'get out of this hell hole'" and that "on her last day she was going to 'bash heads in, flip tables, and kill the people she didn't like.'" A jury found Fulwiler guilty of terroristic threats.

Fulwiler moved the district court for judgment of acquittal pursuant to Minn. R. Crim. P. 26.03, subd. 18(3), arguing that the evidence was insufficient to sustain the conviction, or in the alternative, for a new trial pursuant to Minn. R. Crim. P. 26.04, subd. 1, based on ineffective assistance of counsel and prosecutorial misconduct. The district court granted an evidentiary hearing on Fulwiler's ineffective-assistance-of-counsel claim but denied her motion for acquittal or new trial based on prosecutorial misconduct. The district court did not address the sufficiency-of-the-evidence claim. Following the evidentiary hearing, the district court denied Fulwiler's motion for judgment of acquittal or new trial based on ineffective assistance of counsel. The district court sentenced Fulwiler, placing her on probation for a period of five years. This appeal follows.

2

**D E C I S I O N**

**I.**

When addressing a sufficiency-of-the-evidence challenge, our review is limited to determining whether the evidence "was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We "view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any testimony conflicting with that verdict." *State v. Chavarria-Cruz*, 839 N.W.2d 515, 519 (Minn. 2013) (quotation omitted). This is particularly true when resolution of the matter depends on conflicting testimony "because weighing the credibility of witnesses is the exclusive function of the jury." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). We will not reverse a conviction when "the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt," could reasonably conclude that the appellant was proven guilty of the offense. *Bernhardt v. State*, 684 N.W.2d 465, 476 (Minn. 2004) (quotation omitted).

The elements of terroristic threats are (1) a person threatens (2) to commit a crime of violence (3) with purpose to terrorize another or in a reckless disregard of the risk of causing terror in another. *State v. Bjergum*, 771 N.W.2d 53, 55 (Minn. App. 2009) (citing Minn. Stat. § 609.713, subd. 1), *review denied* (Minn. Nov. 17, 2009). A "crime of violence" includes murder and assault in the first, second, and third degrees. *See* Minn. Stat. § 609.713, subd. 1 (stating that "crime of violence" has the same meaning as

3

"violent crime" in Minn. Stat. § 609.1095, subd. 1(d), which lists, in part, all the degrees of murder and first- through third-degree assault).

At Fulwiler's trial, co-worker A.L. testified that, on November 1 or 2, 2012, she observed Fulwiler enter the break room at the casino and heard her say that she "wanted to come in on her last day and bash people's heads in and kill people that she did not like." Co-worker S.R. testified that he heard Fulwiler say "on her last day she was going to come in and kill all the floors she didn't like." S.R. explained that "floors" refers to the pit supervisors at the casino. Co-worker K.S. testified that A.L. told her that Fulwiler threatened "flipping tables, bashing heads, whatever," on her last day of work. K.S.'s supervisor, T.K., testified that K.S. told her that "she had heard from another associate that [Fulwiler] had said on her last day of work that the people she didn't like she was going to shoot and take down."

A.B., the director of human resources, testified that K.S. was very scared when she talked to her and that K.S. had been told by coworkers that Fulwiler "was going to bring a gun into the work place and shoot the people she didn't like." A sergeant with the Mille Lacs Tribal Police Department testified that he responded to a threats complaint at the casino on November 10, 2012. The sergeant further testified that he gathered information that "an employee had resigned and made some threats that on her last day of employment which was coming due, that she would cause harm to employees that she didn't care for." Fulwiler took the stand and also called M.S. to testify in her defense.[1]

---

[1] Fulwiler did not provide a transcript of her own testimony or M.S.'s testimony for appellate review.

4

Fulwiler contends on appeal that she did not make the threatening statements and that the state's witnesses were lying, pointing to inconsistencies in the witnesses' testimony regarding whether the threat included the use of a gun versus "bashing heads in." But "[i]nconsistencies or conflicts between one witness and another do not necessarily constitute false testimony or serve as a basis for reversal." *State v. Mems*, 708 N.W.2d 526, 531 (Minn. 2006). "[B]oth credibility determinations and the weighing of evidence are tasks reserved to the jury." *State v. Dahlin*, 695 N.W.2d 588, 596 (Minn. 2005).

While the witnesses' statements may have been inconsistent regarding whether Fulwiler threatened to shoot people or "bash heads in," "all inconsistencies in the evidence are . . . resolved in favor of the state." *State v. Budreau*, 641 N.W.2d 919, 929 (Minn. 2002) (quoting *State v. Bergeron*, 452 N.W.2d 918, 924 (Minn. 1990)). Further, the jury could have concluded that both shooting someone and "bashing heads in" constitute, at a minimum, an assault in the third degree, which requires "substantial bodily harm." Minn. Stat. § 609.223, subd. 1 (2012); *see also* Minn. Stat. § 609.02, subd. 7a (2012) ("'Substantial bodily harm' means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or which causes a fracture of any bodily member.").

The jury, after having the opportunity to evaluate the credibility of all the witnesses' testimony, found that the state proved beyond a reasonable doubt that Fulwiler threatened to commit a crime of violence with the purpose of terrorizing another or in

5

reckless disregard of causing terror in another. We conclude that the evidence is sufficient to sustain Fulwiler's terroristic-threats conviction.

## II.

Fulwiler argues that the prosecutor committed misconduct in her closing argument by referencing unrelated shootings and commenting on the credibility of witnesses. We review closing arguments in their entirety to determine whether prosecutorial misconduct occurred. *State v. Vue*, 797 N.W.2d 5, 15 (Minn. 2011). The prosecutor has "considerable latitude" in making a closing argument, and the argument is not required to be "colorless." *State v. Williams*, 586 N.W.2d 123, 127 (Minn. 1998). Fulwiler did not object to any of the alleged misconduct during the trial, but she moved the district court for a new trial based on prosecutorial misconduct in a posttrial motion. The district court denied Fulwiler's posttrial motion. We review a district court's denial of a posttrial motion for a new trial based on prosecutorial misconduct for an abuse of discretion. *State v. Smith*, 464 N.W.2d 730, 734 (Minn. App. 1991), *aff'd*, 476 N.W.2d 511 (Minn. 1991).

> Whether a new trial should be granted because of misconduct of the prosecuting attorney is governed by no fixed rules but rests within the discretion of the trial judge, who is in the best position to appraise its effect. The [district] court's determination should be reversed on appeal only where the misconduct, viewed in the light of the whole record, appears to be inexcusable and so serious and prejudicial that defendant's right to a fair trial was denied.

*State v. Wahlberg*, 296 N.W.2d 408, 420 (Minn. 1980).

6

**Inflaming the Passions or Prejudices of the Jury**

Prosecutors "should not use arguments calculated to inflame the passions or prejudices of the jury" and should not "divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law." *State v. Clark*, 291 Minn. 79, 82, 189 N.W.2d 167, 170 (1971) (quotation omitted). We "pay special attention to statements that may inflame or prejudice the jury where credibility is a central issue." *State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995).

Fulwiler argues that the prosecutor committed misconduct when she stated:

> I can't come up with a reason or a scenario where that would not be in reckless disregard that somebody would take that comment and have concern, be fearful or worried that hey, that's—what we read about in the papers, the naval yard shooting, school shooting, work place shootings—every day it seems like. People don't know what people are going to actually follow through on those kinds of threats but people know better than to make those kinds of threats.

The district court concluded that the prosecutor's reference to the naval yard shooting, school shooting, and work place shootings was improper and constituted error because it referred to unrelated events not in evidence at trial. But the district court concluded that the prosecutor did not refer to the unrelated shootings to encourage the jury to consider extraneous facts; rather, the prosecutor sought to provide context for why Fulwiler's statements were in reckless disregard of causing terror in others. The district court concluded that the prosecutor committed harmless error because one reference to

7

the other shootings in a 29-minute closing argument "did not influence the jury in any prejudicial manner so as to deny [Fulwiler] a fair trial."

We agree with the district court's analysis. The prosecutor's reference to the naval yard shooting constitutes error—particularly because that incident occurred only eight days before this trial. If the prosecutor had provided a detailed account of the shooting or had repeatedly reminded the jury of other recent shootings, the reference may have been prejudicial to Fulwiler. But, here, the prosecutor only referenced the other shootings once in the course of a two-day trial. Therefore, we conclude that the prosecutor's error was harmless.

**Commenting on the Credibility of the Witnesses**

Fulwiler also argues that the prosecutor committed misconduct when she commented on the credibility of the witnesses. "It is improper for a prosecutor in closing argument to personally endorse the credibility of witnesses." *Id.* at 364. "Disparaging the defense or its witnesses" is prosecutorial misconduct, as is "bolster[ing] the credibility of the state's witnesses with the prosecutor's own opinion." *State v. Hobbs*, 713 N.W.2d 884, 887-88 (Minn. App. 2006), *vacated in part on other grounds* (Minn. Dec. 12, 2006). But the prosecutor may "analyze the evidence and vigorously argue that the state's witnesses were worthy of credibility whereas defendant and his witnesses were not" and "urge the jury to consider defendant's interest in the outcome in assessing his credibility." *State v. Googins*, 255 N.W.2d 805, 806 (Minn. 1977).

Here, the prosecutor summarized the testimony and suggested explanations for the discrepancies in the witnesses' testimony. After summarizing Fulwiler's testimony, the

8

prosecutor asked the jury, "[I]s that credible?  Does that make sense to you?"  The prosecutor pointed to Fulwiler's interest in the outcome of the case, stating, "Does she have motive to lie?  You bet."  But a prosecutor may properly acknowledge that the defendant has a stake in the outcome of the case.  *See id.*  In addition, the prosecutor repeatedly reminded the jury that the state carried the burden of proof and that it was the jury's job to assess the credibility of the witnesses.  Therefore, the prosecutor did not improperly comment on the credibility of the witnesses.  We conclude that the district court did not abuse its discretion by denying Fulwiler's motion for a new trial based on prosecutorial misconduct.

### III.

Fulwiler argues that she received ineffective assistance of counsel because her counsel advised her against testifying to certain facts and did not call any character witnesses in her defense.  "[I]neffective assistance of counsel claims involve mixed questions of law and fact," which we review de novo.  *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003).  The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984).  To prevail on her claim, Fulwiler must show "that counsel's performance fell below an objective standard of reasonableness, and that a reasonable probability exists that the outcome would have been different but for counsel's errors."  *Rhodes*, 657 N.W.2d at 842.  We apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.  Generally, we will not review an ineffective-assistance-of-counsel

9

claim based on trial strategy, which includes decisions such as what evidence to present and what witnesses to call at trial. *State v. Bobo*, 770 N.W.2d 129, 138 (Minn. 2009).

Fulwiler did not provide the transcript of her own testimony at trial or the transcript of the February 7, 2014 evidentiary hearing. Our review is limited to the partial transcripts from the jury trial and the district court's order denying Fulwiler's motion based on ineffective assistance of counsel. The district court found that Fulwiler's trial counsel's testimony at the February 7 evidentiary hearing was credible and that her counsel spoke with her on a number of occasions and appeared with her at all court proceedings. The district court noted that Fulwiler's counsel "seemed well prepared [at trial], and he vigorously advocated on behalf of his client."

Fulwiler's claims involve strategic trial decisions—namely that her counsel advised her to not make certain statements during her testimony and declined to call certain witnesses. The partial transcripts available in the record demonstrate that Fulwiler's counsel advocated for her, maintained her innocence, adequately cross-examined the state's witnesses, and otherwise conducted himself in an objectively reasonable manner. His advice and decisions during trial were discretionary trial-strategy tactics, which we decline to review. Based on the limited record before us, Fulwiler has failed to demonstrate that her counsel's performance fell below an objective standard of reasonableness and that a reasonable probability exists that the outcome would have been different but for counsel's alleged errors.

**Affirmed.**