STATE of Minnesota, Respondent,

v.

Darryl Andre HARRIS, Appellant.

No. A04–1923.

Supreme Court of Minnesota.

May 18, 2006.

John M. Stuart, State Public Defender, Suzanne Marie Senecal–Hill, Assistant State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, Kelly Susan Kemp, Assistant Attorney General, St Paul MN; and Alan L. Mitchell, St. Louis County Attorney, Duluth, MN, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Chief Justice.

In the summer of 2001, appellant Darryl Andre Harris was tried, convicted, and sentenced for first-degree felony murder [1] and attempted first-degree felony murder [2] for the shooting death of David Greenwood and the shooting injury of David Voegeli. On appeal, we reversed and remanded for a new trial because of an unconstitutional delegation of authority to the judicial officer who presided over the trial. *State v. Harris*, 667 N.W.2d 911, 913 (Minn.2003). On remand, the case was reassigned to a St. Louis County district court judge and proceeded to jury trial in April 2004. Harris was again convicted and sentenced for first-degree felony murder and attempted first-degree felony murder. In this appeal, Harris asserts that he was deprived of a fair trial by erroneous and prejudicial evidentiary rulings and by the denial of lesser-included-offense instructions. We affirm.

On the evening of February 22, 2000, while at an apartment in Duluth, Harris shot Voegeli, severing his spinal cord, and also shot Greenwood, killing him. Three days later, law enforcement tracked Harris to a home in Duluth. After unsuccessfully attempting to establish contact with Harris throughout the night, a police tactical team fired tear gas into the home, went in, and found Harris hiding under a mattress. He was arrested and ultimately indicted for first-degree felony murder and attempted first-degree felony murder.[3]

At Harris's second trial, John Horton testified that on the night of the shootings, he was attempting to arrange a drug deal between his friend Greenwood and Harris, but that Horton and Harris, who were passengers in a car driven by Steven Allen, were having trouble coordinating an agreeable time and place for the transaction. Due to Greenwood's concerns, Horton did not want to bring Harris directly to Greenwood, who was located at an apartment shared by Voegeli and Licolle Behan. Instead of going directly to the apartment, Horton instructed Allen to

---

1. Minn.Stat. § 609.185(3) (2000).

2. Minn.Stat. §§ 609.185(3); Minn.Stat. § 609.17, subd. 1 (2004).

3. The indictment also charged second-degree intentional murder, second-degree felony murder, attempted second-degree intentional murder and first-degree assault. The second-degree felony murder charge was dismissed on motion by the state.

park the car a few blocks away. Horton proposed that he take the drug money from Harris, walk alone to the apartment, "check on the price," and check if there "was going to be some kind of deal." Horton offered to leave his cell phone with Harris as collateral. Harris rejected the proposal, directed Allen to wait in the car, and accompanied Horton to the Voegeli/Behan apartment.

When Harris and Horton arrived at the apartment, Voegeli, Behan, and Greenwood were there, along with Efftimia Mylonas, a neighbor, and Lucas Johnson, a friend of Greenwood. Horton, Voegeli, Behan, Mylonas, and Johnson testified that after Harris entered the apartment, he brandished a gun and instructed everyone to get on the floor. Harris then asked who had the drugs, and Horton said that Greenwood did. As Harris focused his attention on Greenwood, Voegeli grabbed a glass baking dish and cracked it over Harris's head. Then Johnson struck Harris with a broom handle, and Greenwood and Voegeli grappled with Harris. During the struggle, Harris shot Voegeli and Greenwood, and Johnson fled to the bedroom. Behan testified that after the shots were fired, she heard a couple of "clicks"; then Harris said "I've got to get * * * out of here," and fled. Horton, Behan, Mylonas, and Johnson all testified that Harris was the only person with a gun at the apartment that evening.

Harris testified on his own behalf, explaining that he went to the apartment with Horton to sell drugs, not to buy them, and that when he arrived he was ambushed: hit on the head from behind and then hit on the side of his head with a glass object. As the apartment's occupants attacked him, he saw that Voegeli had a gun. After seeing Voegeli's gun and while continuing to be attacked, Harris shot Voegeli, and then Greenwood. Harris testified that he had not intended to kill

Greenwood, but he admitted that he intended to fire his gun into Greenwood's back and that the shot was at close range. Harris also testified that he had intentionally fired his gun at Voegeli but had not intended to kill him, only "[t]o stop him from shooting me."

The jury found Harris guilty as charged. Judgment of conviction was entered for the first-degree felony murder of Greenwood and the attempted first-degree felony murder of Voegeli. Harris was sentenced to life in prison for the first-degree murder and a consecutive 190–month term for the attempted first-degree murder. This appeal followed.

## I.

Harris contends that the cumulative effect of erroneous and prejudicial evidentiary rulings deprived him of a fair trial. Specifically, Harris challenges the admission of testimony to impeach an unavailable witness, the admission of excerpts from his police statement, and the limitation of expert defense testimony. As a general rule, the decision to admit or exclude evidence is committed to the district court's discretion and will not be reversed absent a clear abuse of that discretion. *State v. Litzau,* 650 N.W.2d 177, 182 (Minn.2002).

*Impeachment of Unavailable Witness.* Adam Feltus, a prison acquaintance of Harris, stated in an audiotaped statement that Feltus was in Voegeli's apartment on the day of the shooting and that Voegeli said he had a gun and was going "to get this fool for his money." Feltus refused to testify at trial and was declared an unavailable witness. The defense was allowed to play his taped statement to the jury, and the state was permitted to impeach the statement with Feltus's prior felony convictions.

■ On rebuttal, over objection of defense counsel, the state was permitted to recall a police officer for purposes of inquiring into the officer's involvement with Feltus. The district court ruled that the officer could testify, subject to ordinary evidentiary objections during the testimony. While testifying, the officer gave a narrative answer explaining that Feltus had been the prime suspect in 22 auto thefts, an aggravated robbery, and over 10 burglaries. Harris asserts error in the admission of this testimony, but Harris made no objection to the testimony when it was given. Failure to object to the admission of evidence generally operates as a waiver of the right to have the claimed error reviewed on appeal unless the admission of the evidence constituted plain error affecting the defendant's substantial rights. *Litzau*, 650 N.W.2d at 182. We find no plain error in the admission of this evidence.

■ *Suppressed Statement to Police.* Harris's police statement was initially suppressed because it had been obtained in violation of Harris's *Miranda* rights. But the district court allowed two very brief portions of the 2–hour–long interview to be played to the jury for the purpose of rebutting Harris's answers to cross-examination concerning his confusion during the interview as to whether it was Voegeli or Greenwood whom he had seen with a gun. *See United States v. Havens*, 446 U.S. 620, 626–28, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) (holding defendant's statements on cross-examination are subject to proper impeachment, even if the impeachment evidence is otherwise inadmissible as direct evidence of guilt). In the first tape excerpt heard by the jury, Harris explained that he shot "the little dude," Greenwood, when he saw "the little dude" had a gun and after firing a warning shot. In the second tape excerpt, Harris said, "Shit, he didn't get no chance to raise it at me, you

know what I'm saying, so I shot it [sic] his little—I shot his ass, you know."

Harris argues that the tape excerpts were needlessly cumulative and more prejudicial than probative under Minn. R. Evid. 403. Harris's counsel initially objected to the admission of the taped statement but when the excerpts were played for the jury, defense counsel stated that he had no objection. Further, because the excerpts played for the jury were consistent with Harris's primary claim that he acted in self-defense, we cannot conclude that the excerpts were prejudicial.

■ *Limitation on Expert Testimony.* As part of his defense, Harris presented the testimony of a forensic pathologist who had reviewed the autopsy report and other documents. During the examination of the witness, Harris's counsel asked the witness to:

> [A]ssume that there's testimony to the affect [sic] that Mr. Harris was hit in the head with a glass object hard enough to shatter the glass and also hit in the head with a broom handle. * * * Please explain to the jury the possible or the range of possible injuries that * * * could result.

The district court sustained the state's objection to the testimony. Harris asserts the ruling was error, but he neither established an adequate foundation for the opinion nor made an offer of proof of the substance of the evidence, which was not apparent from the context of the question asked. *See* Minn. R. Evid. 703 (requiring that expert witness testimony be supported by adequate foundation); Minn. R. Evid. 103(a) (prescribing that error may not be predicated on a ruling excluding evidence unless "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked"). Generally, in the absence of an offer of

proof, unless the substance of the evidence is apparent from the context, an appellate court cannot assess the significance of the excluded testimony. *See State v. Lee*, 494 N.W.2d 475, 479 (Minn.1992) (stating that claimed errors were not properly preserved for review by means of an offer of proof "showing the nature of the evidence excluded so that courts on appeal could determine if it was error to exclude the evidence and whether the error, if any, was prejudicial").

## II.

Harris also argues that the denial of his request for jury instructions on lesser-included offenses related to the shooting of Greenwood was prejudicial error. In regard to the Greenwood shooting, the jury was instructed on first-degree felony murder[4] (with aggravated robbery[5] as the predicate felony) and a single lesser-included offense, second-degree intentional murder.[6] Harris argues in this appeal, as he did at trial, that the jury should have also been instructed on three additional lesser-included offenses: third-degree murder,[7] first-degree heat-of-passion manslaughter,[8] and second-degree felony murder[9] (with aggravated robbery as the predicate felony).

 A defendant should be granted an instruction on a lesser-included offense "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); *see also State v. Dahlin*, 695 N.W.2d 588, 595 (Minn.2005). Both at trial and on appeal, this inquiry is made by reviewing the evidence actually adduced at trial in the light most favorable to the party requesting the instruction. *See Dahlin*, 695 N.W.2d at 597. A court may neither weigh competing evidence nor make credibility determinations when determining whether to

---

4. A person commits first-degree felony murder when a person:

 causes the death of a human being with intent to effect the death of the person or another, while committing or attempting to commit burglary, aggravated robbery, kidnapping, arson in the first or second degree, a drive-by shooting, tampering with a witness in the first degree, escape from custody, or any felony violation of chapter 152 involving the unlawful sale of a controlled substance.

 Minn.Stat. § 609.185(3).

5. "Whoever, while committing a robbery, is armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or inflicts bodily harm upon another, is guilty of aggravated robbery in the first degree * * *." Minn.Stat. § 609.245, subd. 1 (2004).

6. A person commits second-degree intentional murder when a person "causes the death of a human being with intent to effect the death of that person or another, but without premedi-

tation." Minn.Stat. § 609.19, subd. 1(1) (2004).

7. "Whoever, without intent to effect the death of any person, causes the death of another by perpetrating an act eminently dangerous to others and evincing a depraved mind, without regard for human life, is guilty of murder in the third degree * * *." Minn.Stat. § 609.195(a) (2004).

8. A person commits heat-of-passion manslaughter when a person "intentionally causes the death of another person in the heat of passion provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances." Minn.Stat. § 609.20(1) (2004).

9. A person commits second-degree felony murder when a person "causes the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense other than criminal sexual conduct in the first or second degree with force or violence or a drive-by shooting." Minn.Stat. § 609.19, subd. 2(1) (2004).

grant a requested lesser-included-offense instruction. *Id.* at 598.

■ Harris argues that, pursuant to his request, an instruction on third-degree murder should have been submitted to the jury. Third-degree murder requires that "the reckless or wanton acts of the accused were committed without special regard to their effect on any particular person or persons." *State v. Fratzke,* 354 N.W.2d 402, 410 (Minn.1984) (quoting *State v. Wahlberg,* 296 N.W.2d 408, 417 (Minn. 1980)). Here, where it was undisputed that Harris intentionally directed one shot at close range towards Greenwood, no third-degree murder instruction was required.

■ Harris also argues that it was error to deny his request for an instruction on second-degree felony murder, which, unlike first-degree felony murder, does not have an intent-to-kill requirement. *See* Minn.Stat. § 609.19, subd. 2(1) (2004). Harris argues that an instruction on second-degree felony murder should have been submitted because a jury could have rationally found that Harris had not intended to kill Greenwood. Harris's testimony supports this contention. Harris testified that although he did intend to *shoot* Greenwood, he did not intend to kill him.[10] While a defendant's denial of an intent to kill may defy credulity in some cases, *see, e. g., Stiles v. State,* 664 N.W.2d 315, 320–21 (Minn.2003) (holding that there was no rational basis for a jury to believe that the defendant did not act with intent to kill when the defendant shot the victim at close range three times, recocking his shotgun between each shot), here the evidence would have permitted a rational jury to find Harris guilty of the lesser offense. The shooting occurred during a brief, chaotic brawl as Harris was being assaulted by a number of people. Given the nature of the encounter and Harris's own testimony, there was a basis in the evidence for a rational jury to determine that Harris shot Greenwood during a felony and without an intent to kill. Therefore, the requested instruction on second-degree felony murder should have been submitted.

■ To be granted a new trial, however, a defendant must show not just that the denial of a lesser-included-offense instruction was error, but also that the error caused prejudice to the defendant, so as to "diminish the reliability of the guilt determination." *Beck v. Alabama,* 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *see Dahlin,* 695 N.W.2d at 598–99 (stating that when a lesser-included-offense instruction was warranted but denied, the analysis proceeds to whether the defendant was prejudiced). We determine whether there was prejudice by examining "the instructions actually given [at trial] and the verdict rendered by the jury." *Dahlin,* 695 N.W.2d at 599. While in theory a jury must acquit whenever the state has not proved all the elements of a charged offense, "[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction," rather than let the defendant go free entirely. *Keeble,* 412 U.S. at 212–13, 93 S.Ct. 1993 (emphasis in original). In other words, a defendant may have suffered prejudice when a lesser-included-offense instruction was merited, but the jury was instead given what amounts to "a Hobson's choice between the higher offense or nothing." *Stiles,* 664 N.W.2d at 319. In these situations, a court "cannot say that the

---

**10.** An intent to shoot does not necessarily evince an intent to kill. *See* Minn.Stat. § 609.02, subd. 9(4) (2004) (defining "in- tent"); *State v. Duke,* 335 N.W.2d 511, 515 (Minn.1983).

availability of a third option—convicting the defendant of [a merited, but uninstructed lesser-included offense]—could not have resulted in a different verdict." *Keeble,* 412 U.S. at 213, 93 S.Ct. 1993.

 But in this case, we do not believe that the denial of an instruction on second-degree felony murder prejudiced Harris, so as to call into doubt the reliability of the jury's guilt determination. It is clear that the jury was not left with a Hobson's choice, requiring a conviction of the greater crime or an outright acquittal. The jury was instructed on the lesser offense of second-degree intentional murder but still found Harris guilty of the greater offense of first-degree intentional felony murder. If the jury had entertained a reasonable doubt about Harris's guilt of the first-degree murder, the jury could have convicted him of second-degree murder and acquitted him of the first-degree offense. That the jury convicted Harris of the greater offense, despite the availability of the lesser offense or "third option," indicates that Harris suffered no prejudice from the denial of the second-degree felony murder instruction. *See State v. Shepherd,* 477 N.W.2d 512, 516 (Minn.1991) (stating that "the fact that the jury concluded that there was premeditated intent to kill, even though they could have opted for either of the lesser included offenses actually submitted to them, is a strong and sufficient indication that the defendant was not prejudiced by the failure to have second degree felony murder submitted"); *State v. Merrill,* 274 N.W.2d 99, 105 (Minn. 1978) (determining that when the district court instructed the jury on first-degree premeditated murder and second-degree intentional murder, the failure to give requested lesser-included-offense instructions did not prejudice the defendant on the issue of intent because the jury's verdict of guilty on first-degree premeditated murder indicated that it not only believed that the defendant acted with intent, but

that he acted with premeditation as well); *see also Dahlin,* 695 N.W.2d at 599 (reaffirming the prejudice analysis of both *Merrill* and *Shepherd* ).

Harris also argues that the district court erred by denying an instruction on heat-of-passion manslaughter, but this argument fails for the same reason the second-degree-felony-murder argument fails. Since the jury convicted Harris of first-degree felony murder, error in refusing an instruction on heat-of-passion manslaughter, if any, would not affect the reliability of the guilt determination. The denial of the requested instructions on lesser-included offenses of homicide was not prejudicial error.

Affirmed.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.