STATE OF MINNESOTA

IN SUPREME COURT

A22-1273

Dakota County

State of Minnesota,

Respondent,

vs.

Gabriel Alfonso Sanchez Cruz,

Appellant.

Anderson, J.
Concurring, Thissen, J.
Took no part, Procaccini, J.

Filed: November 22, 2023
Office of Appellate Courts

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Kathryn M. Keena, Dakota County Attorney, Heather Pipenhagen, Assistant Dakota County Attorney, Hastings, Minnesota, for respondent.

Travis Kowitz, Kowitz Law, Lindstrom, Minnesota, for appellant.

_____

S Y L L A B U S

1.      The district court did not abuse its discretion by precluding defendant from asserting the affirmative defense of entrapment at trial because the written notice of the defense was not submitted until 4 days before jury selection began and he provided only

1

minimal facts to support his defense of entrapment, in contravention of the requirements in Minn. R. Crim. P. 9.02, subd. 1(6).

2.      The jury's verdicts finding defendant guilty of first-degree felony murder and second-degree intentional murder are supported by sufficient evidence.

3.      The district court did not abuse its discretion by denying defendant's request for jury instructions on the lesser-included offenses of second-degree unintentional murder, third-degree murder, and second-degree manslaughter.

4.      It was error to convict defendant of the lesser-included offense of second-degree murder.

Affirmed in part, reversed in part, and remanded.

O P I N I O N

ANDERSON, Justice.

Appellant Gabriel Alfonso Sanchez Cruz was indicted with first-degree felony murder while committing an aggravated robbery and second-degree intentional murder for the shooting death of Bryant Lutgens in January 2021. Cruz asserted the affirmative defense of entrapment, arguing that a confidential informant who was present during the illegal drug transaction "induced [Cruz] into committing an armed robbery," which led to the death of Lutgens. The district court did not allow Cruz to present his entrapment defense during the trial. The State presented testimony from one of Cruz's codefendants, who testified that Cruz arranged to purchase illegal drugs from Lutgens, and when they met on the side of the road, Cruz shot Lutgens in the head at point-blank range and then drove away. At the close of evidence, Cruz requested jury instructions on the

lesser-included offenses of second-degree unintentional murder, third-degree depraved mind murder, and second-degree manslaughter; the district court denied all of these jury instruction requests. The jury found Cruz guilty of both first-degree felony murder and second-degree intentional murder. The district court sentenced Cruz to life in prison with the possibility of release after 30 years.

On direct appeal, Cruz argues that the district court abused its discretion by prohibiting him from asserting the affirmative defense of entrapment at trial and denying his request for jury instructions on the lesser-included offenses of second-degree unintentional murder, third-degree murder, and second-degree manslaughter. Cruz also argues that the evidence is not sufficient to support guilty verdicts for first-degree felony murder and second-degree intentional murder. Because we conclude that the district court did not abuse its discretion by prohibiting Cruz from asserting his entrapment defense at trial and denying his request for jury instructions on the lesser-included offenses, and the evidence is sufficient to support the jury's guilty verdicts, we affirm Cruz's first-degree felony murder conviction. However, because it was error to convict Cruz of first-degree murder as well as the lesser-included offense of second-degree murder, we reverse and remand for the district court to vacate the second-degree murder conviction.

**FACTS**

Bryant Lutgens was shot in the head on the evening of January 31, 2021, and left on the side of a road in Dakota County. On February 3, police officers stopped a vehicle that had been rented by Lutgens because someone other than Lutgens was driving the vehicle. Following a car and foot chase, police officers arrested the driver of the vehicle, appellant

3

Gabriel Alfonso Sanchez Cruz. The law enforcement investigation revealed that Cruz had arranged to purchase illegal drugs from Lutgens, and when they met on the side of the road to complete the transaction, Kyle Reagan, Jason Beck, and Ryan Whitman were also present. The State charged all four individuals, including Cruz, with second-degree intentional murder. On December 10, 2021, a grand jury indicted Cruz with murder in the first degree while committing an aggravated robbery.

Cruz filed four discovery demands in November 2021, December 2021, February 2022, and May 2022. The last two discovery demands requested information related to codefendant Reagan and his work as a confidential informant. In a memorandum responding to Cruz's final discovery demand, the State refused to turn over further information about Reagan's confidential informant work, alleging that the information sought by the defense was unrelated to the Cruz prosecution and sensitive in nature because it revealed the identity of a confidential informant. The State also claimed that it was not in possession of the confidential informant information because Reagan worked as an informant for a different law enforcement agency, the Southwest Hennepin Drug Task Force.

Cruz initially pursued an alternative perpetrator affirmative defense related to codefendant Reagan on May 25, but he eventually withdrew that defense and instead discussed an entrapment affirmative defense during the pretrial conference on June 2, 2022. The State did not dispute that Reagan was a confidential informant and conceded that Reagan was informing on Cruz. The State argued, however, that there was no *Brady*

violation[1] because the potentially exculpatory information was disclosed to Cruz when Reagan mentioned that he was an informant during his initial statement to police and Cruz's grand jury proceeding.

Cruz filed a formal written notice of the entrapment defense on June 9. Later that day, he also filed a memorandum to compel the discovery information related to Reagan's work as a confidential informant. In his memorandum, Cruz stated that the information was "extremely relevant and material" because "Regan [sic] may have entrapped him in this case," and he "needs more information to be able to fully present this issue to the Court."

Jury selection for the trial began on the following Monday, June 13. That morning, Cruz told the district court that he was entrapped by the government placing Reagan, a confidential informant, "close to Mr. Cruz to set him up" prior to the shooting of Lutgens. The State objected to Cruz asserting the entrapment defense, and the following exchange occurred:

> Defense counsel: Well, Your honor, I believe that this is—this is a very important issue, along with the *Brady* issue regarding missing discovery in this case, and I think that Rule 26 says that this is the time to do this. Mr. Cruz has the—
>
> District court: The time to do what?
>
> Defense counsel: To proffer information. To have a hearing and present evidence which includes testimony from Mr. Cruz for the court's consideration. If the court would deny an entrapment defense before we start a trial, and then Mr. Cruz takes the stand in his defense and presents sufficient

---

[1] Under *Brady v. Maryland*, it is a violation of the right to due process for a prosecutor to suppress material evidence favorable to the defendant. 373 U.S. 83, 87 (1963).

evidence to meet such a small burden of proof, at that time we'd be—our hands are tied. We don't have an entrapment defense at that time.

We need to know in advance of trial whether or not he's provided an entrapment defense. That can be done either by having the issue decided by the Court, and quite frankly we're prepared to do that. We're prepared to waive this issue which is a matter of law. Waive the jury—waive the jury deciding this issue.

If the Court decides that we've met this burden, and the State has not met their burden to prove beyond a reasonable doubt that he was predisposed, this matter does not go to the jury, and we're prepared to do that now.

I think judicial efficiency and everything else that's important here during a COVID era, it's important. If we can decide this issue now, defense is prepared to do that. Thank you.

The State argued that there was no evidence suggesting that any agent of the government set up a robbery that turned into a murder and that the time to deal with entrapment was at the omnibus hearing, which had already been held.[2] The district court took the issue under advisement and jury selection began.

On June 20, the sixth day of jury selection, the parties discussed the entrapment issue on the record. Cruz addressed the timeliness of his written notice, which was filed on June 9, and argued that he was not able to confirm that Reagan was informing on Cruz until the State admitted that fact on the record on June 2 during the pretrial conference. The State contended that the only information it had regarding Reagan and any of his activities as an informant came from the discovery that both parties had before trial. Cruz then addressed the procedure for asserting the affirmative defense and claimed that because

---

[2]    The omnibus hearing was originally scheduled for November 11, 2021, but took place February 25, 2022, after the first-degree murder indictment was filed.

he did not have an opportunity to present evidence to the district court during a hearing, he should be allowed to present his entrapment defense to the jury. The State responded that the court should not allow Cruz to present the defense to the jury because he had failed to make a prima facie showing of entrapment.

The district court took a brief recess and then ruled that Cruz's entrapment defense would not be presented to the jury. The court noted that Minn. R. Crim. P. 9.02, subd. 1(6)(c), requires an entrapment defense to be raised and litigated at the omnibus hearing. The court determined that the affirmative defense of entrapment was not timely raised. The court also held that even if Cruz had timely raised the defense, he did not meet his burden of proving the defense by a preponderance of the evidence.

The next day, June 21, the parties continued to discuss the entrapment defense despite the previous ruling the day before by the district court. Cruz argued that he had not waived his right to have a jury hear and decide the validity of his entrapment defense. According to Cruz, that jury determination was a prerequisite to any decision by the court as to the validity of the entrapment defense. The State argued that Cruz had already asked the court to make the decision, and thus waived his right to present the defense to the jury. The court rejected the argument by Cruz, declaring that "the proffer and the preponderance of the evidence lies with the Court, not with the jury." The district court further explained that Cruz had all the necessary information to make his argument that he was entrapped and reiterated that Cruz failed to provide any evidence suggesting he was entrapped by Reagan to commit a murder or an armed robbery.

Then, on June 22, opening statements were delivered and the State presented testimony from the three codefendants who were present during the shooting. Each received a plea deal in exchange for his testimony. The testimony established the following facts, set forth below.

On January 31, 2021, Whitman, Reagan, and Beck were together when Reagan (the confidential informant) told Whitman that he needed to leave and meet Cruz to get more illegal drugs. All three then drove to Inver Grove Heights and met Cruz in a parking lot. They got into the red Jeep driven by Cruz and used drugs. At some point, Cruz said that he was going to rob Lutgens and showed his three associates his handgun.

Cruz and his passengers drove to the location where he was supposed to meet Lutgens to buy the drugs. After parking behind Lutgens' rental vehicle, Cruz and Beck got into Lutgens' vehicle while Reagan and Whitman remained in Cruz's Jeep. Beck testified that Cruz, after entering Lutgens' vehicle, pointed his gun at Lutgens. Lutgens then left his vehicle yelling with his hands in the air as he ran towards the back of the vehicle to open the rear hatch. Cruz followed Lutgens, and they began to grab each other and wrestle. Whitman testified that eventually Cruz, standing within 2 feet of Lutgens, "pull[ed] the gun out and put it up to [Lutgens'] head." Whitman testified that Lutgens had his hands up in the air and was asking to be left alone. Cruz then pulled the trigger, and Whitman saw Lutgens' head move backwards after the gun was fired. Whitman said that Cruz had the gun in his right hand and shot Lutgens in the left temple.

Reagan testified similarly to Whitman, but Reagan did not see or hear the shooting. According to Reagan, Cruz and Lutgens were wrestling over a duffle bag and moved out

8

of his view behind a snowbank. Reagan then got out to help Cruz and pushed Lutgens, but at that point, Lutgens' body flipped over, and Cruz told him Lutgens was dead. During defense counsel's cross-examination of Reagan, Reagan testified that he told police that Cruz said he accidentally shot Lutgens as they were wrestling. Reagan also answered, "yes," when defense counsel asked if he still believed that to be true.

After the shooting, Reagan, Whitman, and Beck quickly left in Cruz's Jeep. Cruz drove Lutgens' rental vehicle.

Approximately 2 days after the murder, a tipster reported that Cruz shot her friend Lutgens. The tipster was living with Cruz at the time of the murder and testified that she saw Cruz and Reagan outside of Cruz's apartment at night "frantically going through [a] vehicle," and that Cruz told her he shot Lutgens.

The State also presented testimony explaining the investigation of the crime scene and the arrest of Cruz. The Minnesota Bureau of Criminal Apprehension (BCA) documented the crime scene and collected evidence including a fired 9mm cartridge case near Lutgens' body. A medical examiner testified that the autopsy of Lutgens revealed "stippling" present around the entrance wound and that the wound demonstrated the range of fire was within 2 feet. The examiner also explained that soot was found around the entrance wound, and that soot is deposited around a wound when the gun is fired from a distance within 12 inches from the wound. The examiner testified, and autopsy photographs revealed, that the bullet entered the upper part of [Lutgens'] right ear and exited the left back of the head.

9

The State also presented testimony at trial detailing the police chase of Cruz and how police found a 9mm handgun approximately 10 feet away from Lutgens' rental vehicle, which Cruz was driving before his arrest. The BCA determined that the spent cartridge case found near Lutgens' body was fired by the 9mm handgun later found near Lutgens' vehicle. The BCA also located two fingerprints from Cruz on the gun, one on the magazine and one on the slide of the firearm. The BCA searched the vehicles and found blood on the interior front driver door handle of Cruz's Jeep and the front driver side door frame of Lutgens' rental vehicle. All blood samples were identified as originating from Lutgens.

After the State rested, Cruz made a motion for a judgment of acquittal based on insufficient evidence. The district court denied the motion. Cruz requested jury instructions on the lesser-included offenses of second-degree (unintentional) murder, third-degree (depraved mind) murder, and second-degree manslaughter. The district court denied the requested instructions.

The jury returned verdicts of guilty for both first-degree felony murder and second-degree (intentional) murder. The district court convicted Cruz of both offenses and sentenced him to life in prison with the possibility of release after 30 years.

**ANALYSIS**

Cruz raises three issues on direct appeal: (1) whether it was error for the district court to deny Cruz the opportunity to present an entrapment defense to the jury; (2) whether the evidence is sufficient to support the guilty verdicts; and (3) whether the district court abused its discretion by denying his request for jury instructions on lesser-included

offenses. We also address whether the district court erred by convicting Cruz of both first-degree and second-degree murder. Each issue is addressed in turn.

## I.

First, Cruz argues that he properly asserted the affirmative defense of entrapment, and that even if he did not, the remedy imposed by the district court reflects an abuse of discretion. We disagree.

"Disclosure of defenses is a discovery function under the rules." *State v. Lee*, 491 N.W.2d 895, 899 (Minn. 1992). The Minnesota Rules of Criminal Procedure set forth the procedure for asserting the affirmative defense of entrapment. Rule 9.02, subdivision 1, provides that "[t]he defendant must, at the prosecutor's request and before the Rule 11 Omnibus Hearing, make the following disclosures": written notice of the affirmative defense of entrapment, the facts supporting the defense of entrapment, and an election of whether the entrapment defense will be submitted to the court or jury. *See* Minn. R. Crim. P. 9.02, subd. 1(5)–(6).

Subdivision 1(6) of the rule details the proper procedure for raising the affirmative defense of entrapment, specifically:

> (a) If the defendant intends to offer evidence of entrapment, the defendant must inform the prosecutor of the facts supporting the defense, and elect to submit the defense to the court or jury.

> (b) The entrapment defense may be submitted to the court only if the defendant waives a jury trial on that issue as provided in Rule 26.01, subd. 1(2).

> (c) If the defendant submits entrapment to the court, the hearing on entrapment must be included in the Omnibus Hearing under Rule 11 or in the

11

evidentiary hearing under Rule 12. The court must make findings of fact and conclusions of law on the record supporting its decision.

Here, the State requested that Cruz disclose "the information to which the prosecution is entitled under Rule 9.02, subd. 1 of the Minnesota Rules of Criminal Procedure." That rule, as noted earlier, clearly requires a defendant to provide the State written notice of the affirmative defense of entrapment and the facts supporting the defense of entrapment before the Rule 11 Omnibus Hearing. Minn. R. Crim. P. 9.02, subd. 1(5)–(6).

The contested omnibus hearing occurred on February 25, 2022. Cruz did not file a written notice of his entrapment defense until June 9, 2022 (more than 3 months after the omnibus hearing). Moreover, he failed to inform the State of any facts that would support a finding that he was subject to persuasion, badgering, or pressure by the State, which is a required element of an entrapment defense. *See State v. Olkon*, 299 N.W.2d 89, 107 (Minn. 1980). Based on this record, we conclude that Cruz did not properly raise the affirmative defense of entrapment because he violated two of the disclosure requirements of Minn. R. Crim. P. 9.02, subd. 1.

Having concluded that Cruz committed two discovery violations in raising the entrapment defense, we next consider whether the remedy imposed by the district court for these violations reflects an abuse of discretion. If a party fails to comply with the discovery rules, a district court may "grant a continuance, or enter any order it deems just in the circumstances." Minn. R. Crim. P. 9.03, subd. 8. In formulating its remedy, the district court "should take into account: (1) the reason why disclosure was not made; (2) the extent

of prejudice to the opposing party; (3) the feasibility of rectifying that prejudice by a continuance; and (4) any other relevant factors." *State v. Lindsey*, 284 N.W.2d 368, 373 (Minn. 1979). But "[p]reclusion of evidence is a severe sanction which should not be lightly invoked." *Id.* at 374. "[W]e will not overturn [a district court's] ruling absent a clear abuse of discretion," and the "imposition of sanctions for violations of discovery rules and orders is a matter particularly suited to the judgment and discretion of the trial court." *Id.* at 373.

The district court did not evaluate the *Lindsey* factors when it precluded Cruz from presenting the defense to the jury. Although we have not specifically applied the *Lindsey* factors in circumstances in which the district court prohibited a defendant from presenting an entrapment defense at trial, we have applied the factors when a district court has prohibited a mental illness defense, also an affirmative defense covered under the rule, requiring the defendant to provide notice and disclosure. *Lee*, 491 N.W.2d at 900 ("Analyzing the *Lindsey* factors together, we believe that in the unusual circumstances of this case, the trial court did not abuse its discretion in precluding the mental illness defense."); *see also State v. Richards*, 495 N.W.2d 187, 199 (Minn. 1992) ("Defendant was not denied his constitutional right to due process of law by sanctions precluding his presentation of evidence on the mental illness defense where he refused to cooperate with the psychiatrist appointed to assist him and chose not to comply with discovery rules.").

We begin by analyzing the first consideration articulated in *Lindsey*, the reason why Cruz did not disclose his entrapment defense until the week before the start of the trial. According to Cruz, the reason he failed to disclose his entrapment defense earlier was

13

because he did not have the requisite information regarding confidential informants until June. In its brief, the State notes that "the information that the defense was relying on to support the affirmative defense was already known to the defense because it was contained in Reagan's statement to the police and the grand jury transcripts." Cruz conceded at the district court that Reagan admitted he was a confidential informant in his initial statements to police and that there were disclosures of Reagan's confidential informant status in the grand jury transcript. Based on our review of the record, it does not appear that either the defense or prosecution knew with certainty that Reagan was retained as a confidential informant *to inform on Cruz*. But regardless of what value that fact might have added, Cruz knew at the time of the omnibus hearing that Reagan was a confidential informant at the time of the murder and personally knew what, if any, persuasion, badgering, or pressure Reagan directed at him. *See Olkon*, 299 N.W.2d at 107 (explaining that evidence of "something in the nature of persuasion, badgering, or pressure by the state must occur before the inducement element is satisfied"). We therefore conclude that the reason for nondisclosure offered by Cruz weighs against him.

For the second and third factors under *Lindsey*, the record does not show how the State would have been impacted if Cruz had been allowed to present the defense during the trial, so the prejudice to the State and the "feasibility of rectifying that prejudice by a continuance" are unclear. *Lindsey*, 284 N.W.2d at 373.

The fourth *Lindsey* factor allows the district court to consider any other relevant factors. One relevant consideration is the fact that Cruz did not set forth the basis of his defense in reasonable detail. *See State v. Grilli*, 230 N.W.2d 445, 455 (Minn. 1975)

14

(explaining that a defendant must set forth "the basis for the claim of entrapment in reasonable detail"). In fact, Cruz did not include any facts supporting his entrapment defense in his written notice. Rule 9.02, subdivision 1(6), requires the defendant to "inform the prosecutor of the facts supporting the defense, and elect to submit the defense to the court or jury." If the defendant submits the defense to the district court, the court must hold an evidentiary hearing. Minn. R. Crim. P. 9.02, subd. 1(6)(c).

Another relevant consideration is how important the evidence was to the defense. *See State v. Patterson*, 587 N.W.2d 45, 51 (Minn. 1998) (holding the district court did not abuse its discretion in precluding the defendant from presenting an undisclosed witness during trial who "was not crucial" to the defense). Although Cruz argued that the entrapment theory was crucial to his defense, he provides no coherent argument as to how entrapment applied in the context of an intentional murder. At the district court, Cruz explained that he was not arguing that he was entrapped to commit murder, but rather that he was entrapped to commit an armed robbery and a death occurred. Thus, apparently Cruz's argument was that he was entrapped to commit second-degree felony murder, which does not require intent to kill. Minn. Stat. § 609.19, subd. 2(1) (2022). In other words, Cruz failed to explain how a person could be entrapped by a government agent to commit the offenses with which he was charged: first-degree intentional murder or second-degree intentional murder.[3]

---

[3] Cruz cites no authority, in Minnesota or elsewhere, for the use of entrapment as a defense to first- and second-degree intentional murder, and we have found none.

To be sure, Cruz had a due process right to present a complete defense during the trial. *See State v. Smith*, 876 N.W.2d 310, 331 (Minn. 2016) (explaining that due process requires that every defendant be afforded a meaningful opportunity to present a complete defense). But due process has always been subject to limitations, and both Cruz and the State were required to comply with procedural and evidentiary rules designed to ensure both fairness and reliability in the ascertainment of guilt and innocence. *State v. Carlton*, 816 N.W.2d 590, 614 (Minn. 2012).

We recognize that we have reached a different conclusion in a previous decision related to a different Rule 9 affirmative defense, *In re Welfare of M.P.Y.*, 630 N.W.2d 411, 418–19 (Minn. 2001). For the reasons that follow, however, we conclude the facts of *M.P.Y.* are materially distinguishable from the facts here.

In *M.P.Y.*, defense counsel asserted an alibi defense during his opening statement, telling the jury that the defendant was at his aunt's house when the robbery occurred. *Id.* at 414. At the end of defense counsel's opening statement, the prosecutor objected to the alibi reference. *Id.* According to the prosecutor, the reference was improper because the State had not received any witness list or "notice of a defense" as required under Minn. R. Crim. P. 9.02, subd. 1(3). *M.P.Y.*, 630 N.W.2d at 414. Persuaded by the prosecutor's argument, the district court precluded M.P.Y. from testifying about the alibi. *Id.* The jury found the defendant guilty, and the court imposed a presumptive sentence. *Id.* at 415.

On appeal, the defendant in *M.P.Y.* argued the district court abused its discretion when it precluded him from testifying about his alibi without first considering the feasibility of a continuance. *Id.* at 415–16. As a threshold matter, we concluded that the

statements made by defense counsel during his opening argument adequately revealed the substance of the alibi defense. *Id.* at 415. Those statements included the allegation that the defendant "was at an aunt's house between 8 and 9 o'clock, the time of the robbery" and a description of "how [the defendant] landed at the specific spot at which he was arrested." *Id.* Next, we considered the factors articulated in *Lindsey*, 284 N.W.2d at 373. We concluded that the reason for nondisclosure—defense counsel misunderstood his disclosure obligations—weighed against the defendant. *M.P.Y.*, 630 N.W.2d at 417–18. As for the second factor, we concluded the unfair surprise to the State could be eliminated through "the opportunity to investigate the alibi and cross-examine or otherwise impeach the defendant." *Id.* at 418. Finally, we observed that the district court failed to make a finding on the third *Lindsey* factor—feasibility of rectifying the prejudice by ordering a continuance. *Id.* In the absence of a finding on the feasibility of a continuance, we explained that "we cannot be confident that the sanction was not disproportionate to the purpose it was meant to serve." *Id.*

Having reviewed the record here, we conclude that unlike the defendant in *M.P.Y.*, Cruz failed to make an adequate offer of proof to support his affirmative defense. The offer of proof made by the defendant in *M.P.Y.* is quite different than the offer of proof made by Cruz. *M.P.Y.* involved an alibi defense that, if true, would have cleared the defendant of guilt. *See M.P.Y.*, 630 N.W.2d at 414–15 (describing the defendant's alibi argument made during opening statements that alleged the defendant was at his aunt's house when the robbery occurred). In contrast, Cruz first provided notice to the State on May 25 that he intended to rely on "the defense that a third party, specifically Kyle Reagan,

17

perpetrated the acts charged." Cruz then changed course; to pursue his entrapment defense, he claimed that he was relying on the fact that Reagan was a confidential informant during the time of the murder and that he was informing on Cruz. But when Cruz submitted his written notice of an entrapment defense, he did not provide the factual background supporting entrapment. On June 13, the first day of jury selection, after the district court sought additional information about the entrapment claim, Cruz then argued that he would have presented evidence from three sources to show entrapment: (1) testimony from a jailhouse informant who would testify that Reagan admitted to the informant that Reagan and others were pinning a murder on Cruz and that Reagan was working with law enforcement to get close to Cruz; (2) testimony from Cruz's daughter regarding text messages sent by Reagan to her indicating that Cruz had nothing to do with the incident; and (3) Cruz himself would have testified that Reagan gave him the firearm used in the murder, that Reagan and the tipster were working in concert to set up the armed robbery, that Reagan contacted him numerous times on the day of the incident about the robbery, and that he had no relationship with the other codefendants.[4]

Viewing the offered proof of entrapment in a light most favorable to Cruz, this proffered evidence is not sufficient to meet his burden of production needed to raise the entrapment defense for the charge of first-degree felony murder. *See State v. Charlton*,

---

[4]     Setting aside evidentiary issues associated with introducing any of the proffered testimony (e.g., potential hearsay objections), it is difficult to see any connection between the offer of proof and entrapment. The testimony might be relevant to an alternative perpetrator defense, a claim that Cruz did not commit the offense, or witness credibility, but Cruz does not articulate, and we fail to see, the connection to establishing a plan or scheme by the government to "entrap" Cruz.

338 N.W.2d 26, 29 (Minn. 1983) (referencing entrapment as a defense requiring the burden of production, "which requires the defendant to come forward and present a sufficient threshold of evidence to make the defense one of the issues of the case"); *cf. State v. Vaughn*, 361 N.W.2d 54, 57 (Minn. 1985) (concluding that a "[d]efendant did not make a sufficient showing of inducement" because "[t]he undercover officers merely provided defendant with an opportunity to commit the crimes" and "did not pressure or otherwise induce him to commit them").

Although the inadequate offer of proof made by Cruz is sufficient by itself to materially distinguish the facts of his case from the facts of *M.P.Y.*, there are also material differences in the nature of alibi and entrapment defenses that make it less likely that a continuance will rectify the prejudice caused by the disclosure of an entrapment defense 4 days before trial. An entrapment defense is potentially more complicated and may require more effort by the State than simply locating a witness who can undercut the defendant's alibi defense. An entrapment defense requires the State to prepare, for a separate hearing or as part of the jury trial, arguments on multiple elements of entrapment. Entrapment involves the defendant showing that the government induced the commission of the crime. *State v. Abraham*, 335 N.W.2d 745, 747 (Minn. 1983). If inducement is sufficiently raised, then the burden shifts to the State to "show beyond a reasonable doubt that the defendant was predisposed to commit the crime." *Id.* In evaluating inducement, evidence of "something in the nature of persuasion, badgering, or pressure by the state must occur before the inducement element is satisfied." *Olkon*, 299 N.W.2d at 107. Showing

19

predisposition involves potentially introducing evidence of numerous categories of relevant information. *See id.* at 107–08.

In contrast, an alibi defense requires the defendant to inform the prosecutor of the "specific place or places where the defendant was when the alleged offense occurred" and "names and addresses of the witnesses the defendant intends to call at the trial in support of the alibi." Minn. R. Crim. P. 9.02, subd. 1(7). Although this certainly places a burden on the State to address this defense, it does not require proving or disproving multiple elements of the defense. A successful alibi defense means the defendant was not in the location of the crime and thus the defendant is free of guilt. *See Roper v. U.S.*, 403 F.2d 796, 798 (5th Cir. 1968) ("[T]he essence of alibi is the impossibility of the defendant's guilt based on his physical absence from the locus of the crime.").

In sum, Cruz's reliance on *M.P.Y.* is misplaced for two reasons. First, unlike the offer of proof in *M.P.Y.*, which adequately alleged facts that if proven would have satisfied the elements of an alibi defense, the offer of proof made by Cruz is inadequate because it failed to allege any facts that would support a finding that he was subject to persuasion, badgering, or pressure by the State, which is a required element of an entrapment defense. Second, there are material differences in the nature of alibi and entrapment defenses that make it less likely that a continuance will rectify the prejudice caused by the disclosure of an entrapment defense 4 days before trial. Cruz put the district court and the State in the difficult position of addressing a claim of entrapment for first-degree felony murder by submitting his required written notice 4 days before jury selection (instead of months earlier as required by rule) and without detailed facts about how he was entrapped. Given

20

defense counsel's failure to follow the procedural rules for asserting an entrapment defense and consideration of the *Lindsey* factors, we conclude that the district court did not abuse its discretion in precluding Cruz from presenting his entrapment defense at trial.

II.

Next, Cruz asserts that the evidence is not sufficient to support the jury's verdicts finding him guilty of first-degree felony murder and second-degree intentional murder because the State failed to prove beyond a reasonable doubt that he intended to shoot and kill Lutgens. Cruz contends that the circumstantial evidence presented by the State regarding his intent is consistent with the reasonable inference that the shooting was accidental, not intentional. Thus, he argues that the district court should have granted his motion for a judgment of acquittal.

In analyzing a sufficiency of the evidence claim, we "view the evidence in a light most favorable to the verdict and assume the fact-finder disbelieved any testimony conflicting with that verdict" when considering whether sufficient evidence supports the jury's guilty verdict. *State v. Chomnarith*, 654 N.W.2d 660, 664 (Minn. 2003). We will not overturn a verdict "if, giving due regard to the presumption of innocence and to the prosecution's burden of proving guilt beyond a reasonable doubt, the jury could reasonably have found the defendant guilty of the charged offense." *Id.*

To evaluate the sufficiency of circumstantial evidence, we apply a two-step process. *State v. Hassan*, 977 N.W.2d 633, 640 (Minn. 2022). Step one involves identifying "the circumstances proved." *Id.* "[I]n determining the circumstances proved, we consider only those circumstances that are consistent with the verdict." *State v. Silvernail*, 831 N.W.2d

594, 599 (Minn. 2013).  To do so, we "winnow down the evidence presented at trial" to a "subset of facts" that is consistent with the jury's verdict and "disregard evidence that is inconsistent with the jury's verdict."  *State v. Harris*, 895 N.W.2d 592, 600–01 (Minn. 2017).  The jury is "the sole judge of credibility" and " 'is free to accept part and reject part' of the testimony of a particular witness."  *Hassan*, 977 N.W.2d at 640 (quoting *Coker v. Jesson*, 831 N.W.2d 483, 492 (Minn. 2013)).  Second, we analyze "whether 'the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis other than guilt.' "  *State v. Balandin*, 944 N.W.2d 204, 213 (Minn. 2020) (quoting *State v. Leake*, 699 N.W.2d 312, 319 (Minn. 2005)).  A defendant may not rely on "conjecture" or "speculation" to set aside a verdict.  *See State v. Al-Naseer*, 788 N.W.2d 469, 480 (Minn. 2010).

The jury found Cruz guilty of first-degree murder while committing aggravated robbery and second-degree intentional murder.  To prove intent, the State was required to prove beyond a reasonable doubt that Cruz caused the death of a human being "with the intent to effect the death" of that person or another.  Minn. Stat. §§ 609.185(a)(3) (2022), 609.19, subd. 1(1) (2022).  Minnesota Statutes defines "[w]ith intent to" or "with intent that" as meaning "that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result."  Minn. Stat. § 609.02, subd. 9(4) (2022).  Intent is a state of mind, which "generally is proved circumstantially, by inference from words and acts of the actor both before and after the incident."  *State v. Johnson*, 616 N.W.2d 720, 726 (Minn. 2000).  "To prove intent, it is permissible for the jury to 'infer that a person intends the natural and probable consequences of his actions.' "

22

*State v. Irby*, 967 N.W.2d 389, 396 (Minn. 2021) (quoting *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997)). Intent to cause death may be inferred from the manner of shooting. *State v. Harris*, 405 N.W.2d 224, 229 (Minn. 1987).

Here, the State proved the following circumstances at trial. Cruz told Whitman, Reagan, and Beck that he planned to rob Lutgens during the illegal drug transaction and brought a handgun with him. An altercation between Cruz and Lutgens occurred during the drug deal, and at some point, Cruz pulled out his gun and shot Lutgens in the head at a range of less than 2 feet. The only eyewitness to the shooting, Whitman, testified that "Cruz pull[ed] the gun out and put it up to [Lutgen's] head." Whitman observed Lutgens with his hands up in the air, pleading for Cruz to leave him alone, and "the altercation had pretty much stopped." Whitman further testified that "Cruz had the gun and pointed it up to [Lutgens'] head, and then pulled the trigger." Whitman heard the gunshot and saw Lutgens' head go back. Cruz then left Lutgens lying in a snowbank on the side of the road and drove away in Lutgens' vehicle. Cruz was then arrested driving Lutgens' vehicle and connected to the murder weapon by police officers finding the handgun near the vehicle and Cruz's fingerprints on the gun.

Next, we consider whether the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis other than guilt. *Silvernail*, 831 N.W.2d at 599. Cruz argues that a rational inference drawn from the evidence is that he did not intend to cause the death of Lutgens because the gun accidentally went off. In making his argument, Cruz attacks the credibility of Whitman's testimony. Cruz also claims the BCA analyst's testimony and the autopsy results are

23

inconsistent with Whitman's testimony that the shooting happened at a close range and that Cruz shot Lutgens in the left temple.

Cruz fails to recognize that we must "view the evidence in a light most favorable to the verdict and assume the fact-finder disbelieved any testimony conflicting with that verdict," in determining whether sufficient evidence supports the jury's guilty verdict. *Chomnarith*, 654 N.W.2d at 664. Here, Whitman testified that he saw Cruz point his gun at Lutgens' head and pull the trigger. Whitman also testified that Cruz was within 2 feet of Lutgens when he shot him, and the testimony of the medical examiner about stippling and soot confirmed Whitman's testimony that Lutgens was shot at short range, specifically 2 feet or less. To be sure, there are some inconsistencies with the testimony of Whitman and the examiner. Whitman testified that Cruz shot Lutgens in the *left* temple, whereas the examiner testified, and the photos show, that the bullet entered through Lutgens' *right* ear. The specific location of bullet entry is not the most important part of Whitman's testimony. The important part of Whitman's testimony that clearly supports a conviction of intentional murder is the testimony stating that Cruz pointed, and shot, the gun at Lutgens' head from close range. It is the jury that assesses the credibility of the testimony and the jury found Cruz guilty. *See Hassan*, 977 N.W.2d at 640.

In *State v. Campbell*, we determined that the circumstantial evidence was sufficient to prove the defendant's intent to kill based on testimony about the defendant's preparations for a robbery, including his possession of a loaded gun. 161 N.W.2d 47, 55 (Minn. 1968). In *State v. Thompson*, we rejected the argument that a shooting was reflexive or unintentional when the defendant shot the victim in the head after the victim pulled a gun

on the defendant during an illegal drug transaction. 544 N.W.2d 8, 11–12 (Minn. 1996). We concluded that even though the defendant fired the gun only once, that did not contradict the reasonable inference of an intent to kill. *Id.* at 12. We noted that "this court has allowed intent to kill to be shown by a single gunshot fired at close range." *Id.* (citing *State v. Robinson*, 536 N.W.2d 1, 2 (Minn. 1995); *State v. Boitnott*, 443 N.W.2d 527, 531 (Minn. 1989)).

Here, the State proved that (1) Cruz brought his gun to the illegal drug transaction with Lutgens and expressed his intent to rob Lutgens; (2) Cruz took out his gun and pointed it at Lutgens' head as Lutgens begged Cruz to leave him alone; and (3) Cruz pulled the trigger. In addition, the evidence showed that Cruz left Lutgens lying on the side of the road in the middle of a Minnesota winter, did not report the incident to authorities, and was eventually apprehended while driving Lutgens' vehicle. This set of circumstances proved by the State during the trial is consistent with the hypothesis that Cruz intentionally murdered Lutgens and inconsistent with any other rational hypothesis other than guilt. Thus, the evidence is sufficient to support the jury's guilty verdicts.

III.

Finally, Cruz argues the district court abused its discretion by rejecting his request for jury instructions on the lesser-included offenses of second-degree unintentional murder, third-degree murder (depraved mind), and second-degree manslaughter. We review a challenge to jury instructions for abuse of discretion and "view the evidence in the light most favorable to the party requesting the instruction." *State v. Dahlin*, 695 N.W.2d 588,

25

597 (Minn. 2005). To warrant a reversal and a new trial, an appellant must show prejudice. *Id.* at 598–99.

We use a three-part test to determine whether a district court should give a lesser-included offense instruction requested by the defendant. *Id.* at 598. A district court "must give a lesser-included offense instruction when 1) the lesser offense is included in the charged offense; 2) the evidence provides a rational basis for acquitting the defendant of the offense charged; and 3) the evidence provides a rational basis for convicting the defendant of the lesser-included offense." *Id.* In making its determination, the district court "may not weigh the evidence or make credibility determinations." *Id.* The lesser-included offense instruction "need not be given if *no* evidence is adduced to support giving the . . . instruction." *Id.* at 595.

Here, the district court only instructed the jury on first-degree murder while committing aggravated robbery and second-degree intentional murder, both of which include the element of intent. *See* Minn. Stat. §§ 609.185(a)(3), 609.19, subd. 1(1). The district court rejected Cruz's requests for jury instructions on three additional lesser-included offenses: second-degree unintentional murder (Minn. Stat. § 609.19, subd. 2(1)); third-degree murder (Minn. Stat. § 609.195(a) (2022)); and second-degree manslaughter (Minn. Stat. § 609.205(1) (2022)). The jury returned verdicts of guilty for both charged offenses.

The State does not challenge that the requested offenses were lesser-included offenses, and as we have explained, "[e]very lesser degree of homicide or murder is a lesser-included offense of first-degree murder." *State v. Chambers*, 589 N.W.2d 466, 478

(Minn. 1999) (concluding second-degree manslaughter and criminal vehicular homicide were lesser-included offenses of first-degree murder). Thus, we move to part two of the analysis—whether the evidence provides a rational basis for acquitting the defendant of the offense charged.

The district court "found that the record [was] void of any evidence to support the inclusion of second-degree murder unintentional." Cruz argues there was evidence before the district court by pointing to Reagan's testimony. Reagan had the following exchange with defense counsel during cross-examination:

Defense Counsel: [Y]ou recall being questioned by law enforcement back in February, shortly after this incident?

Reagan: Yes.

Defense Counsel: And you were steadfast in saying that you guys did not plan for this to happen. Is that a fair assessment?

Reagan: Yes.

Defense Counsel: In fact, you indicated that Mr. Cruz had told you that this was an accident?

Reagan: Yes.

Defense Counsel: That this happened while they were wrestling?

Reagan: Yes.

Defense Counsel: Correct? That the gun just went off, correct?

Reagan: Yes.

Defense Counsel: And you told that to law enforcement consistently each time you were questioned by them; is that true?

Reagan: I believe so.

Defense Counsel: Okay. And you also believe that to be true; is that correct?

Reagan: Yes.

Defense Counsel: Okay. You never saw Mr. Cruz shoot Mr. Lutgens execution style, did you?

Reagan: No.

Defense Counsel: Because that didn't happen, did it?

Reagan: No.

The State argues that Cruz misrepresents this portion of testimony because Reagan only testified that "*he told police* that Mr. Cruz told him that the incident was an accident," not that Cruz actually said it was an accident. Additionally, the State insists that Reagan's testimony does not support giving a lesser-included offense instruction because (1) Reagan testified he did not tell police the whole truth when he was interviewed; (2) Reagan was Cruz's friend and therefore biased; and (3) Reagan did not actually see or hear the shooting. The State claims that there was insufficient evidence for a jury to rationally find that the shooting of Lutgens was unintentional.

There is arguably some, albeit weak, evidence in the record suggesting that the shooting may have been an accident based on Reagan's limited testimony about his interview with the police. Nevertheless, Reagan also testified that *he did not see the shooting*. The only person who did see the shooting, Whitman, testified that Cruz pointed the gun and shot Lutgens in the head. Additionally, the statements made by Cruz to Reagan asserting an accidental shooting are self-serving hearsay. For these reasons, there was no rational basis for the jury to acquit Cruz of intentional murder and find him guilty of

unintentional murder or manslaughter. The district court did not abuse its discretion by rejecting Cruz's request for jury instructions on second-degree unintentional murder and second-degree manslaughter.

In addition, the State correctly points out that third-degree murder is wholly inapplicable to the facts here because it requires the defendant to exhibit a generalized indifference to human life and that cannot exist when the defendant's conduct is directed with particularity at the person who was killed. *See State v. Noor*, 964 N.W.2d 424, 438 (Minn. 2021) (holding that the mental state required for depraved-mind murder "cannot exist when the defendant's conduct is directed with particularity at the person who is killed"). In this case, there is no evidence that Cruz's actions related to the armed robbery and shooting were directed towards anyone other than Lutgens. All evidence suggests that Cruz brought the gun to rob Lutgens during the illegal drug transaction and multiple witnesses observed Cruz physically struggle with Lutgens. For these reasons, there was no rational basis for the jury to acquit Cruz of intentional murder and find him guilty of depraved-mind murder. Therefore, the district court did not abuse its discretion by rejecting Cruz's request that the jury be instructed on third-degree murder.

Even if the district court had abused its discretion by failing to instruct the jury on one or more of the lesser-included offenses, there was no prejudice here. In assessing prejudice, "[we] consider the instructions actually given and the verdict rendered by the jury." *Dahlin*, 695 N.W.2d at 599. We have recognized that " '[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction,' rather than let the defendant

29

go free entirely." *State v. Harris*, 713 N.W.2d 844, 850 (Minn. 2006) (quoting *Keeble v. United States*, 412 U.S. 205, 208 (1973)). Thus, "a defendant may have suffered prejudice when a lesser-included-offense instruction was merited, but the jury was instead given what amounts to 'a Hobson's choice between the higher offense or nothing.' " *Id.* (quoting *Stiles v. State*, 664 N.W.2d 315, 319 (Minn. 2003)).

In *State v. Harris*, we determined that the district court abused its discretion by not giving the lesser-included instruction on second-degree felony murder. 713 N.W.2d 844, 850 (Minn. 2006). But we held that the error did not prejudice the defendant because the jury chose to convict the defendant of the greater of the two offenses for which the jury was instructed (first-degree intentional felony murder). We reasoned that "[i]f the jury had entertained a reasonable doubt about Harris's guilt of the first-degree murder, the jury could have convicted him of second-degree murder and acquitted him of the first-degree offense." *Id.* at 851.

Here, the jury was presented with two instructions: (1) first-degree murder while committing aggravated robbery and (2) second-degree intentional murder. The jury found Cruz guilty of both offenses. Therefore, given the analysis in *Harris*, Cruz suffered no prejudice. *Id.* ("That the jury convicted [the defendant] of the greater offense, despite the availability of the lesser offense or 'third option,' indicates that [the defendant] suffered no prejudice from the denial of the second-degree felony murder instruction.").

IV.

In addition to the claims asserted by Cruz, we consider an issue not raised on appeal. The district court entered convictions for both first-degree felony murder and

30

second-degree intentional murder after the jury returned the guilty verdicts. The district court erred in doing so. Under Minn. Stat. § 609.04, subd. 1 (2022), a defendant "may be convicted of either the crime charged or an included offense, but not both." We have recognized that "every lesser degree of murder is an included offense." *State v. Zumberge*, 888 N.W.2d 688, 697 (Minn. 2017); *see also State v. Leinweber*, 228 N.W.2d 120, 125 (Minn. 1975). Accordingly, we remand to the district court to vacate the second-degree intentional murder conviction but otherwise leave the guilty verdicts in place.

## CONCLUSION

For the foregoing reasons, we affirm Cruz's conviction for first-degree felony murder but reverse and remand for the district court to vacate the second-degree murder conviction.

Affirmed in part, reversed in part, and remanded.


PROCACCINI, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

31

THISSEN, Justice (concurring).

I concur in the decision in this case. I write separately to express my disagreement with the court's reasons for rejecting appellant Gabriel Alfonso Sanchez Cruz's contentions that the district court abused its discretion in refusing to allow the jury to consider an entrapment defense. In addition, I would resolve the question of whether the district court abused its discretion in failing to instruct the jury on second-degree unintentional murder, third-degree depraved mind murder, and second-degree manslaughter solely on the ground that any error that may have occurred did not prejudice Cruz.

Turning first to the entrapment issue: Cruz does not argue that confidential informant Kyle Reagan entrapped him into intentionally killing Bryant Lutgens. He only argues that he was entrapped into joining an armed robbery. Cruz's decision to take the further step of intentionally killing Lutgens is an independent act distinct from the armed robbery. On those facts, entrapment is not a defense available to Cruz.

I acknowledge that Cruz's apparent theory at trial was that the shooting of Lutgens was an unintentional outgrowth of the armed robbery. But the jury plainly disagreed. It determined that Cruz intentionally shot Lutgens and, as the court correctly holds, the evidence at trial supports that determination. Thus, even if there is a theory under which entrapment into an armed robbery may have been a defense to unintentional felony murder with a predicate offense of armed robbery, the failure to instruct the jury on entrapment was harmless error beyond a reasonable doubt. *See State v. Lindsey*, 284 N.W.2d 368, 374 (Minn. 1979) (applying harmless error review to a district court decision to exclude

evidence as a discovery violation sanction); *see also In re Welfare of M.P.Y.*, 630 N.W.2d 411, 418–19 (Minn. 2001) (same).

I do not agree that the record in this case fairly supports the court's conclusions (1) that Cruz's assertion of the entrapment defense was untimely or (2) that, if Cruz was untimely in asserting his entrapment defense, complete exclusion of the entrapment defense was an appropriate sanction. I also conclude that Cruz identified for the district court sufficient evidence to show (if the jury believed the evidence) that Reagan persuaded him to participate in an armed robbery that Reagan engineered. That is enough to get the issue of entrapment on armed robbery to the jury. *State v. Olkon*, 299 N.W.2d 89, 107 (Minn. 1980) (stating that inducement by a government agent is shown by "something in the nature of persuasion . . . by the state"). Based on my resolution of the case—a resolution with which the court agrees—the court need not have reached those issues. *Carlton v. State*, 816 N.W.2d 590, 614 (Minn. 2012) (stating that resolution of questions "not necessary to our ultimate holding" are dicta).

Finally, our precedent makes clear that Cruz was not prejudiced by the failure of the district court to instruct on the lesser-included offenses. *State v. Harris*, 713 N.W.2d 844, 851 (Minn. 2006). I would not reach, and express no opinion on, the question of whether the district court should have given instructions on at least some of the lesser-included offenses.